750 So.2d 622 (1999)
Terry Melvin SIMS, Appellant,
v.
STATE of Florida, Appellee.
No. 96,818.
Supreme Court of Florida.
October 27, 1999.
Richard Jorandby, Public Defender, and Steven H. Malone, Assistant Public Defender, West Palm Beach, Florida; and Mark E. Olive and Timothy P. Schardl, Special Assistant Public Defenders of the Law Offices of Mark E. Olive, P.A., Tallahassee, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Judy Taylor Rush and Kenneth S. Nunnelley, Assistant Attorneys General, Daytona Beach, Florida, for Appellee.
PER CURIAM.
Terry Melvin Sims, under sentence of death and warrant for execution, appeals the trial court's denial of his motion for postconviction relief filed pursuant to Florida *623 Rule of Criminal Procedure 3.850. We have jurisdiction. See Art. V, § 3(b)(1), Fla. Const. For the reasons stated below, we affirm the trial court's order denying postconviction relief.

PROCEDURAL BACKGROUND
Sims was convicted of first-degree murder and robbery for the 1977 fatal shooting of George Pfeil, a uniformed, off-duty deputy sheriff who entered a pharmacy in Seminole County while it was being robbed by Sims and three other men.[1] The jury recommended death and the trial court followed this recommendation, finding several aggravating circumstances and no mitigating factors. This Court affirmed the convictions and sentence on direct appeal. See Sims v. State, 444 So.2d 922 (Fla.1983), cert. denied, 467 U.S. 1246, 104 S.Ct. 3525, 82 L.Ed.2d 832 (1984). Sims then filed a motion for postconviction relief pursuant to rule 3.850 of the Florida Rules of Criminal Procedure based on claims of ineffective assistance of counsel, evidence allegedly withheld by the State concerning a codefendant's plea bargain, and Hitchcock[2] error during the penalty phase of the trial. Following an evidentiary hearing, the trial court denied relief, and this Court affirmed. See Sims v. State, 602 So.2d 1253 (Fla.1992), cert. denied, 506 U.S. 1065, 113 S.Ct. 1010, 122 L.Ed.2d 158 (1993). This Court also denied Sims' petition for writ of habeas corpus. See Sims v. Singletary, 622 So.2d 980 (Fla.1993).
In 1993, Sims filed a federal petition for habeas corpus in the United States District Court for the Middle District of Florida. That court denied relief as to the conviction, but granted relief as to the death sentence. See Sims v. Singletary, no. 93-1055-CIV-ORL-22 (M.D.Fla. Aug. 22, 1997). The Eleventh Circuit Court of Appeals affirmed the district court's denial of relief as to conviction, but reversed the grant of relief as to sentencing. See Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998). The United States Supreme Court denied certiorari. See Sims v. Moore, ___ U.S. ___, 119 S.Ct. 2373, 144 L.Ed.2d 777 (1999).
On September 23, 1999, Governor Bush issued a warrant scheduling Sims for execution.[3] On October 21, 1999, Sims filed a second 3.850 motion, alleging that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by not providing the defense a 1978 police report prepared by H.F. McGilvray, an investigator with the Gainesville Police Department. The report highlights McGilvray's interview with B.B. Halsell, a participant in the 1977 pharmacy robbery, wherein Halsell admitted to committing a number of drugstore robberies and burglaries in the Gainesville area with a man by the name of Terry Wayne Gayle. Sims contends Detective Anthony Calangelo of the Seminole County Sheriffs Office was aware of the interview with Halsell and that the report would have supported his theory of defense that Gayle, not Sims, participated in the Seminole County pharmacy robbery. In a second, related claim, *624 Sims alleges that newly discovered evidence that Halsell and Curtis Baldree lied about Sims' involvement in the murder establishes his innocence. Sims bases this claim on statements by four men who assert that after the trial in this case Halsell had told them that Gayle, not Sims, had been a participant in the robbery.[4] The trial court conducted an evidentiary hearing on both claims on October 24, 1999. Following the hearing, the trial court denied the motion.

APPEAL
With regard to claim I, the Brady claim, the trial court found that there was no evidence that Lieutenant Calangelo had the McGilvray report and suppressed it from the defense. The trial court acknowledged that the report indicated Halsell and Gayle's involvement in drugstore robberies in Gainesville. However, the trial court found that Halsell had been "thoroughly discredited by cross-examination at trial" and that "it stretches the imagination to suppose that the only Terry in the group that committed crimes outside of Gainesville was Terry Gayle." In fact, the same report lists Sims as a prominent member of a group, including Halsell, that frequently committed drugstore robberies and burglaries. The record also reflects that Halsell had conceded before and during trial his involvement in other crimes with Gayle. Accordingly, the court denied claim I.
With regard to claim II, the trial court found that Sims had satisfied the threshold requirement for asserting a claim based on newly discovered evidence because Halsell had not made the alleged statements until after Sims' trial. The trial court also accepted as true the fact that Halsell had made the statements. However, the trial court concluded that this evidence would probably not produce an acquittal on retrial. See Jones v. State, 591 So.2d 911, 915 (Fla.1991) ("In order to provide relief, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial."). The court reasoned:
In order for newly discovered evidence to be the basis for relief it must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or his counsel could not have known about it through the use of due diligence. Since the statements attributed to Halsell were made after the trial they appear to meet this threshold test. However, the question before the court is whether this evidence would probably produce an acquittal at retrial. Jones v. State, 591 So.2d 911 (Fla.1991). The answer to this question is probably not. First, there are three independent eyewitnesses to the robbery. Second, the testimony of the other codefendant who testified at trial, Curtis Baldree, has not been attacked as untrue except to theorize that if Halsell said he was lying at trial Baldree must have lied too. Third, the person who shot and killed George Pfeil was wounded in the process by a gunshot to the hip. The defendant had such a wound which went untreated for several days. The doctor who treated Sims testified at trial as a rebuttal witness.
Thus, the trial court concluded that there was substantial evidence to convict Sims of the murder even in the face of the impeachment evidence concerning Halsell now asserted.
Upon our review of the record and the guiding principles under Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective *625 of the good faith or bad faith of the prosecution"), and the United States Supreme Court's recent decision in Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) ("The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."), we find no error with the trial court's denial of the Brady claim. On the record, which includes defense counsel's acknowledgment of an awareness of Halsell's criminal involvement with Gayle in other robberies and burglaries, we cannot conclude that the State's failure to provide the information contained in the Gainesville report undermines our confidence in the outcome of the proceedings.
Likewise, after considering the record and the law concerning newly discovered evidence as set forth in Jones, we find no error with the trial court's conclusion that the newly discovered impeachment evidence was not sufficient to probably produce an acquittal. We can find no fault, factually or legally, with the trial court's analysis and assessment of the evidence.
Accordingly, we affirm the trial court's denial of Sims' motion for postconviction relief. No motion for rehearing will be heard.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] The record reveals that Sims, B.B. Halsell, Curtis Baldree and Gene Robinson were involved in the robbery of the pharmacy. The facts in this case are set forth in greater detail in our opinion on direct appeal. See Sims v. State, 444 So.2d 922 (Fla.1983).
[2] Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).
[3] Following the signing of the warrant, Sims issued numerous public records requests from various state agencies. The trial court denied Sims' motion to compel production of public records, which this Court affirmed by order dated October 21, 1999. Sims also filed a petition for all-writs jurisdiction and extraordinary relief and a motion to adopt and take judicial notice of records in Provenzano v. Moore, 744 So.2d 413 (Fla.1999), Provenzano v. State, 739 So.2d 1150 (Fla.1999), Jones v. State, 701 So.2d 76 (Fla.1997), and Jones v. Butterworth, 691 So.2d 481 (Fla.1997), concerning the constitutionality of the electric chair. By order dated October 20, 1999, this Court granted Sims' motion to take judicial notice of the records in Provenzano and Jones, but denied Sims' petition for all-writs jurisdiction.
[4] These witnesses included: Harold Bryan, Walter Danny Morrison, Clyde Oglesby, and Jerry Lawrence.