754 So.2d 702 (2000)
George James TREPAL, Appellant,
v.
STATE of Florida, Appellee.
No. SC94505.
Supreme Court of Florida.
March 9, 2000.
*703 Todd G. Scher, Litigation Director, Capital Collateral Regional Counsel-Southern Region, Fort Lauderdale, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Carol M. Dittmar, Assistant Attorney General, Tampa, Florida, for Appellee.
PER CURIAM.
We have for review the order of the Circuit Court of the Tenth Judicial Circuit, in and for Polk County, in the case State v. Trepal, No. CF90-1569A1-XX (Fla. 10th Cir.Ct. Oct. 28, 1998), pursuant to our jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
Appellant was convicted of first-degree murder and sentenced to death based on his placing poison in soda bottles and putting the bottles in his neighbor's house, the ingestion of which resulted in one death and the illness of others. This Court affirmed *704 the conviction and sentence on direct appeal. See Trepal v. State, 621 So.2d 1361, 1362 (Fla.1993). Appellant then filed his first motion pursuant to Florida Rule of Criminal Procedure 3.850 in the trial court, which denied relief. While Trepal's appeal was pending before this Court, the U.S. Department of Justice issued a report on the FBI's laboratory practices. See Office of Inspector General, U.S. Dep't of Justice, The FBI Laboratory: An Investigation into Laboratory Practices and Alleged Misconduct in Explosives-Related and Other Cases (1997). We relinquished jurisdiction in appellant's case so that he could conduct discovery and file a new rule 3.850 motion based on newly discovered evidence arising out of the report, if necessary.
In 1998, appellant filed an amended rule 3.850 motion claiming that evidence recently obtained from the United States Department of Justice established that at trial the State submitted misleading, inaccurate, and perjured testimony concerning unreliable and inadmissible scientific evidence. Appellant also alleged that a State witness misled defense counsel regarding the results of scientific tests in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Appellant further claimed ineffective assistance of counsel based on counsel's failure to discover the newly discovered evidence. In response thereto, the State filed a discovery motion stating in pertinent part:
1) During the pendency of his case at trial, Mr. Trepal's trial counsel employed an expert at the Georgia Tech University to examine the scientific evidence in this case. Pursuant to motion by the defendant the Polk County Sheriffs Department transported the requested evidence to Georgia Tech in Atlanta, Georgia so that testing could be done by the defendant's expert.
2) During the trial phase of this case, no expert was ever listed by the defendant on discovery and no expert was ever called as a witness at trial, to testify regarding the tests done at Georgia Tech.
3) The defendant has now filed an Amended Motion to Vacate Judgments of Convictions and Sentences, dated August 31, 1998, in which the defendant makes allegations of inappropriate behavior on the part of State witnesses who tested these same materials.
4) When the defendant filed his original motion for post-conviction relief in this case, he made allegations of ineffective assistance of counsel. These allegations served to waive any attorney-client privilege which the defendant may have previously enjoyed with his trial counsel. In addition, in his amended Motion the defendant complains that no adversarial testing took place at his capital trial with respect to this evidence due to inappropriate behavior by the State and/or its witnesses. The information now sought by the State will serve to disprove this allegation by the defendant.
5) The State seeks the name and address of any and all experts utilized by the defendant in this case to test the materials he now complains were inappropriately tested by the State.
6) The State further seeks any and all reports, notes or other writings that concern the hiring of such experts, their conversations with counsel for the defendant, their findings or test results, their opinions about the evidence and their conclusions. This should include information on the type of equipment used and the manner in which it was used; why the particular type of equipment used by the experts was relied upon by them; and, whether they discussed their findings with others.
Appellant filed a responsive motion arguing that the State's motion should be denied because (1) the discovery request was premature since the need for an evidentiary hearing based on appellant's 1998 rule 3.850 motion had not yet been determined; (2) the State waived the right to seek such discovery by failing to earlier *705 seek discovery of the Georgia Tech tests; and (3) the State was not entitled to the information since appellant did not list an expert from Georgia Tech as a witness at trial and therefore the information remained privileged. The trial court granted the State's discovery request and appellant filed an appeal with this Court.
On appeal, the State filed a motion to dismiss, arguing that this Court does not have jurisdiction to review nonfinal orders under article V, section (3)(b)(1) of the Florida Constitution since that provision only pertains to final orders. The State further stated, however, that since
the trial court's ruling compels disclosure of information which the appellant asserts is protected by attorney-client privilege, review may be necessary because any appeal from the final action in this case may not provide an adequate remedy for the alleged impropriety. Clearly, such review should be sought in a petition for writ of certiorari rather than appeal. See, e.g., State v. Kokal, 562 So.2d 324 (Fla.1990)(State sought extraordinary writ for review of trial court's order to disclose records).
Appellant responded that this Court has jurisdiction to review the instant nonfinal order under article V, section 3(b)(1) since the death penalty has been imposed. Appellant also argued that the State conceded that this issue should be reviewed; thus, this Court should hear the appeal.
This Court filed an order that granted a temporary stay as to the trial court's discovery order and directed both parties to file memoranda explaining the jurisdictional basis for this appeal. Pursuant to the order, the State argued that "[s]ince this Court has independent jurisdiction of this matter under Article V, Section 3(b)(1), the `all writs' provision [under section 3(b)(7)] authorizes review of the instant proceeding as an extraordinary writ." The State added that this "case presents this Court with the opportunity to clarify and reconcile the inconsistent dispositions of capital collateral interlocutory appeals." Appellant asserted that this Court has jurisdiction to hear this appeal under section 3(b)(1), relying on State v. Lewis, 656 So.2d 1248 (Fla.1994), and State v. Kokal, 562 So.2d 324 (Fla.1990), and expressly stated that he is not claiming any other form of jurisdiction. Appellant quoted this Court's statement that "[a]s a practical matter, we routinely entertain appeals from final orders in death penalty collateral proceedings, see Fla. R.Crim. P. 3.851, and on occasion review interlocutory orders in such proceedings." State v. Fourth Dist. Court of Appeal, 697 So.2d 70, 71 (Fla. 1997). This Court denied the State's motion to dismiss and stayed the proceedings below pending review.

JURISDICTION
Under the current rules of procedure there is no established method for death-sentenced defendants to challenge interlocutory discovery orders issued during rule 3.850 proceedings. We are nevertheless convinced that an expedited appeal with necessary record attachments to challenge interlocutory discovery orders issued during rule 3.850 hearings is necessary to prevent the disclosure of information that would irreparably harm a defendant and render appellate review inadequate. A pleading that falls within this Court's existing jurisdiction is therefore needed to address this inequity in capital collateral litigation.

This Court's Current Practice as to Interlocutory Discovery Orders
The current practice for this Court is to occasionally grant review of interlocutory orders in cases involving death-sentenced defendants, but we have been less than precise in defining our authority to grant such review. Our authority to review imposition of the death sentence speaks in terms of final orders and judgments: The Court "[s]hall hear appeals from final judgments of trial courts imposing the death penalty." Art. V, § (3)(b)1, Fla. Const.; Fla. R.App. P. 9.030(a)(1)(A)(i) (this Court shall review "final orders" of *706 courts imposing the death sentence); see Philip J. Padovano, Florida Appellate Practice § 3.2, at 46-47 (2d ed.1997). However, this Court in fact reviews interlocutory discovery orders in capital collateral proceedings. See Sims v. State, 750 So.2d 622, 623 n. 3 (Fla.1999)("Following the signing of the warrant ... [t]he trial court denied Sims' motion to compel production of public records, which this Court affirmed by order ...."), cert. denied, ___ U.S. ___, 120 S.Ct. 1233, ___ L.Ed.2d ___ (2000); Fourth Dist. Court of Appeal, 697 So.2d at 71; see also Lewis, 656 So.2d at 1249 (under section 3(b)(1) this Court reviewed two nonfinal orders, from different trial courts, that denied the State's respective motions to quash witness subpoenas issued to trial court judges); LeCroy v. State, 641 So.2d 853, 853 (Fla. 1994)("We have before us an interlocutory appeal of a disclosure order in a postconviction capital proceeding under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const."); State v. Kokal, 562 So.2d 324, 325 (Fla.1990)(this Court reviewed a discovery order under section 3(b)(1) that had been issued by a trial court hearing a postconviction claim, where the defendant had been sentenced to death). Thus, there is a history of the Supreme Court of Florida accepting jurisdiction in the instant scenario, although absent an express statement of how the Court determines whether to exercise its jurisdiction.

How the DCAs Proceed in Such Cases
The district courts of appeal rely on the petition for writ of certiorari to review interlocutory discovery orders.[1] This Court defined the nature and scope of certiorari as follows:
Generally stated, a writ of certiorari may, in the discretion of the court, be issued where it is duly made to appear, at least prima facie, that the record of a lower court shows that the proceedings in a cause have violated established principles of law, or that the adjudication in the cause is a palpable miscarriage of justice, and that the result is a substantial injury to the petitioner, who has no other remedy, and seeks a writ of certiorari.
American Ry. Express Co. v. Weatherford, 84 Fla. 264, 268, 93 So. 740, 742 (1922). Thus, for example, in Esman v. Board of Regents, 425 So.2d 156 (Fla. 1st DCA 1983), the First District Court of Appeal exercised its certiorari power in the case of an interlocutory discovery order thusly:
The rule is well-established ... that interlocutory orders rendered in connection with discovery proceedings may be reviewed by common law certiorari when it is demonstrated that the order complained of was rendered by the court in excess of its jurisdiction, or that the order does not conform to the essential requirements of the law and may cause material injury through subsequent proceedings for which the remedy by appeal will be inadequate.
Id. at 157 (where the court reviewed by certiorari a trial court's denial of a party's discovery request in light of the work-product privilege); see Crocker Constr. Co. v. Hornsby, 562 So.2d 842, 843 (Fla. 4th DCA 1990)(stating that certiorari relief may be granted to avoid harmful "cat-out-of-the-bag" disclosures).
This Court, however, does not have jurisdiction to entertain petitions for common law certiorari. We therefore must rely on our constitutional jurisdiction to hear appeals from final judgments of trial *707 courts imposing the death penalty to avoid such harmful "cat-out-of-the-bag" disclosures that can result in irreparable harm.

Expedited Appeal of Discovery Orders Under Section 3(b)(1)
With respect to our ultimate jurisdiction in postconviction cases where the death sentence has been imposed, we reasserted our jurisdiction in State v. Matute-Chirinos, 713 So.2d 1006 (Fla.1998), by elaborating that
in addition to our appellate jurisdiction over sentences of death, we have exclusive jurisdiction to review all types of collateral proceedings in death penalty cases. This includes cases in which this Court has vacated a death sentence and remanded for further penalty proceedings. However, our jurisdiction does not include cases in which the death penalty is sought but not yet imposed, State v. Preston, 376 So.2d 3 (Fla.1979), or cases in which we have vacated both the conviction and sentence of death and remanded for a new trial.
Id. at 1008 (quoting Fourth Dist. Court of Appeal, 697 So.2d at 71). Furthermore, acceptance of jurisdiction in the instant scenario under 3(b)(1) is consistent with this Court's acceptance in previous similar cases. See Fourth Dist. Court of Appeal, 697 So.2d at 71; Lewis, 656 So.2d at 1249; LeCroy, 641 So.2d at 853; Kokal, 562 So.2d at 325. Drawing upon the district courts' use of the writ of certiorari to provide an instructive model of how this Court may exercise its jurisdiction in such cases, we hold that to obtain relief an appellant must establish that the order compelling discovery does not conform to the essential requirements of law and may cause irreparable injury for which appellate review will be inadequate.
In order to expeditiously decide these appeals, as is done with petitions for writs of certiorari, strict filing requirements that mirror the requirements in Florida Rule of Appellate Procedure 9.100 are mandated. The initial petition shall be filed within thirty days of the disputed discovery order, the petitioner must attach necessary portions of the record in an appendix, and the respondent may respond pursuant to an order to show cause. See id. To that end, we hereby refer to the Criminal Procedure Rules Committee and Appellate Court Rules Committee the formulation of narrowly tailored rules pursuant to which defendants may seek appeals as discussed above.
We emphasize that our review of interlocutory orders is limited to postconviction proceedings following imposition of the death penalty and, as in the instant case, a stay of trial court proceedings will not be automatic upon the filing of an interlocutory appeal, but rather the defendant must request that a stay be granted. The Court also notes that the right to file an interlocutory appeal shall not work to extend the time limitations contained in Florida Rules of Criminal Procedure 3.851 and 3.852.

THE MERITS
The trial court did not depart from the essential requirements of law in granting the State's discovery motion. This Court resolved the issue of waiver of the attorney-client and work-product privileges in postconviction ineffective assistance of counsel claims in LeCroy v. State, wherein we explained:
We agree with the lower court that [the defendant] waived his attorney-client privilege when he filed a motion for postconviction relief claiming ineffective assistance of counsel. In our opinion, such a waiver includes not only privileged communications between defendant and counsel, but also must necessarily include information relating to strategy ordinarily protected under the work-product doctrine. Under such circumstances, the State will ordinarily be entitled to examine the trial attorney's entire file. However, the defendant may move to exclude from discovery *708 any portion of the file which contains matters unrelated to the crimes for which the defendant was convicted, such as evidence of other crimes. In this event, the court shall conduct an incamera inspection of that portion of the file in question to determine whether it should be disclosed.
641 So.2d at 854 (quoting Reed v. State, 640 So.2d 1094, 1097 (Fla.1994)).
In the present case, appellant seeks to appeal the trial court's order granting the State's motion to compel discovery, which required appellant to provide
the names and addresses of witnesses; and, all reports, notes or other writings that concern the hiring of such experts, their conversations with counsel for the defendant, their findings or test results, their opinions about the evidence and their conclusions.
... [T]he information provided will include information on the type of equipment used and the manner in which it was used; why the particular type of equipment used by the experts was relied upon by them, and whether they discussed their findings with others.
The discovery order is clearly related to appellant's Brady and ineffective assistance claims. Further, the order appears to be limited to material relating to the experts interviewed by defense counsel. To the extent the State seeks irrelevant or privileged material, appellant should file a motion with the trial court seeking the exclusion thereof from discovery, and the trial court may inspect the material in camera and resolve the issue. See LeCroy, 641 So.2d at 854. Thus, the trial court's order is hereby affirmed.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
WELLS and QUINCE, JJ., recused.
NOTES
[1] District courts of appeal also rely on petitions for writ of certiorari to review interlocutory discovery orders in capital trials where death has not been imposed. See, e.g., State v. Jordan, 630 So.2d 1171 (Fla. 5th DCA 1993)(the district court, pursuant to a petition for writ of certiorari, quashed a trial court discovery order issued during the penalty phase of a trial in a capital case before the defendant-as turned out to be the case-was sentenced to death).