# Supreme Court of Florida

_____

No. SC2026-0519
_____

**CHADWICK WILLACY,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC2026-0526
_____

**CHADWICK WILLACY,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

April 15, 2026

PER CURIAM.

Thirty-one years after Chadwick Willacy was sentenced to death for capital murder, Governor DeSantis signed his death

warrant on March 13, 2026, with an execution date of April 21, 2026.

When the warrant was signed, Willacy already had a pending motion under Florida Rule of Criminal Procedure 3.852[1] seeking public records from the Florida Department of Corrections (FDOC) on Florida's lethal injection protocol. He filed a second motion after the warrant was signed seeking from FDOC, the Executive Office of the Governor (Governor), the Office of the Attorney General (AG), and the State Attorney for the Eighteenth Judicial Circuit (State Attorney) records regarding communications purportedly had among them. The circuit court denied both motions in one order and denied Willacy's subsequent motion for rehearing/in camera

---

1. When rule 3.852 was adopted, it was described as a "discovery rule for public records production ancillary to proceedings pursuant to [Florida Rules of Criminal Procedure] 3.850 and 3.851," i.e., postconviction proceedings. *Sims v. State*, 753 So. 2d 66, 69 (Fla. 2000) (quoting *Amends. to Fla. Rules of Crim. Proc.*, 754 So. 2d 640, 643 (Fla. 1999)); *see also* Fla. R. Crim. P. 3.852(a)(1) ("This rule is applicable only to the production of public records for capital postconviction defendants and does not change or alter the time periods specified in Florida Rule of Criminal Procedure 3.851. Furthermore, this rule does not affect, expand, or limit the production of public records for any purposes other than use in a proceeding held pursuant to rule 3.850 or rule 3.851.").

review.  Importantly, Willacy did <u>not</u> file a rule **3.851** motion.  And the time to file such a motion under our order setting an expedited timeline for post-warrant proceedings has already expired.

For the reasons explained below, we have jurisdiction[2] but treat Willacy's appeal of the order denying his public records requests as a petition filed pursuant to Florida Rule of Appellate Procedure 9.142(c) and deny the petition.  We dismiss his appeal from the order denying his motion for extension of time to file a successive postconviction motion.  We further deny Willacy's petition for writ of habeas corpus, as well as his request for oral argument.

## I. Background

The facts of this case are especially heinous.  Willacy was in the process of burglarizing the home of his neighbor, Marlys Sather, when she came home and caught him in the act.  After binding, strangling, and bludgeoning her with a force so intense that it

---

2.  *See* art. V, § 3(b)(1), (9), Fla. Const.; Fla. R. App. P. 9.142(c); *Sims*, 753 So. 2d at 67 (reviewing order denying public records under rule 3.852 on plenary appeal where capital defendant's warrant had been signed and successive postconviction motion was still pending).

dislodged a portion of her skull, Willacy doused her with gasoline and set her on fire, training a fan on the fire to feed the flames. Ms. Sather ultimately died from smoke inhalation. And Willacy was convicted of first-degree murder, arson, robbery, and burglary.

We affirmed Willacy's convictions on direct appeal but remanded for a new penalty phase based on the trial court's denial of Willacy's attempt to rehabilitate a juror. *Willacy v. State,* 640 So. 2d 1079 (Fla. 1994).

Following his new penalty phase, the jury recommended the death sentence by a vote of 11-1, and the trial court again sentenced him to death. The sentence was supported by the existence of five aggravating factors showing that the murder was: (1) committed in the course of a robbery, arson, and burglary; (2) committed to avoid lawful arrest; (3) committed for pecuniary gain; (4) especially heinous, atrocious, or cruel; and (5) committed in a cold, calculated, and premeditated manner. The trial court found no statutory mitigators and thirty-one nonstatutory mitigators to which it assigned little weight. We affirmed his sentence on appeal. *Willacy v. State,* 696 So. 2d 693 (Fla.), *cert. denied,* 522 U.S. 970 (1997).

Willacy then filed his initial postconviction motion, followed by an amended motion, raising thirty-one claims. Following an evidentiary hearing on multiple claims, the circuit court denied relief. We affirmed, and we also denied an accompanying petition for writ of habeas corpus. *Willacy v. State*, 967 So. 2d 131 (Fla. 2007), *cert. denied*, 552 U.S. 1265 (2008).

Willacy filed a flurry of other unsuccessful state and federal challenges over the years. *See Willacy v. McNeil*, 33 So. 3d 36 (Fla. 2010) (table) (denying successive habeas petition); *Willacy v. State*, 90 So. 3d 822 (Fla. 2012) (affirming denial of first successive postconviction motion), *cert. denied*, 568 U.S. 1147 (2013); *Willacy v. Sec'y, Dep't of Corr.*, No. 6:08-CV-619-ORL-31LRS, 2014 WL 3594213 (M.D. Fla. July 18, 2014) (denying federal habeas petition raising many of the same claims raised in *Willacy*, 967 So. 2d 131), *aff'd*, 703 F. App'x 744 (11th Cir. 2017), *cert. denied*, 584 U.S. 964 (2018);[3] *Willacy v. State*, 238 So. 3d 100 (Fla.) (affirming denial of

---

[3]. Several years later, Willacy moved to reopen his federal habeas case. The motion was denied, and the Eleventh Circuit Court of Appeals denied a certificate of appealability.

successive postconviction motion raising *Hurst*[4] claim), *cert. denied*, 586 U.S. 866 (2018); *Willacy v. State*, 314 So. 3d 246 (Fla. 2021) (affirming denial of successive postconviction motion raising claim under *Flowers v. Mississippi*, 588 U.S. 284 (2019)).

And in this case, after the circuit court denied his motion for public records on March 23, 2026, two days later, Willacy filed a motion for rehearing and in camera inspection of the records and a motion for an extension of time to file a successive postconviction motion. Both motions were denied, though the circuit court granted Willacy additional time to file his successive postconviction motion.

In the meantime, on March 25, 2026, Willacy petitioned this Court for mandamus relief (SC2026-0483), which was denied on March 31, 2026.[5] Willacy never filed a successive postconviction

---

4. *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020).

5. In death penalty cases, a mandamus petition is treated as it would be under Florida Rule of Appellate Procedure 9.100(e) and (h), *see* Fla. R. App. P. 9.142(b)(1), and there is no automatic stay of proceedings. The only automatic stay provided for extraordinary writs under rule 9.100(h) applies when an appellate court issues a show cause order on a prohibition petition.

motion.[6]

Instead, he filed the instant action, habeas petition, and challenges to the denials of his motions for extension of time to file a successive postconviction motion and for rehearing/in camera inspection of public records.

## II. Rule 9.142(c) Petition

### A. Jurisdiction and Scope

This petition concerns only the circuit court's single order denying Willacy's public records requests—the pre-warrant request filed March 6 and the post-warrant requests filed March 18—and Willacy's related motion for rehearing/in camera review. All public records requests were raised in motions filed pursuant to Florida Rule of Criminal Procedure 3.852.

When rule 3.852 was adopted, it was described as a "discovery rule for public records production ancillary to proceedings pursuant to rules 3.850 and 3.851." *Sims v. State*, 753 So. 2d 66, 69 (Fla. 2000) (citing *Amends. to Fla. Rules of Crim. Proc.*, 754 So. 2d 640,

---

6. In his mandamus petition, Willacy asserted that without the requested records, a rule 3.851 motion could not be filed.

643 (Fla. 1999)).  Though we did not indicate in *Sims* whether the order was final or nonfinal, in that case, this Court reviewed an order denying public records under rule 3.852 on plenary appeal where the capital defendant's warrant had been signed and the successive postconviction motion was still pending.  *Id.* at 67.  A month later, in *Trepal v. State*, we determined that we have jurisdiction over nonfinal discovery orders in postconviction death cases, 754 So. 2d 702, 707 (Fla. 2000) ("We emphasize that our review of interlocutory orders is limited to postconviction proceedings following imposition of the death penalty . . . ."), and described an order denying a motion to compel public records as a postconviction discovery order, *id.* at 706 ("Following the signing of the warrant . . . [t]he trial court denied Sims' motion to compel production of public records, which this Court affirmed by order . . . ." (alteration and omissions in original) (quoting *Sims v. State*, 750 So. 2d 622, 623 n.3 (Fla. 1999))).  To effectuate the procedures in *Trepal*, we then adopted rule 9.142, which provides for review of nonfinal orders in death penalty postconviction proceedings.  *See Amend. to Fla. Rules of App. Proc. (Rule 9.142)*, 837 So. 2d 911 (Fla. 2002).

Though no successive postconviction motion is currently pending in this case, we think it appropriate to treat Willacy's appeal of the circuit court's order denying both his March 6 and 18 public records requests as a petition seeking review of a nonfinal discovery order pursuant to rule 9.142(c) based on our precedent.

However, we conclude that we lack jurisdiction to review Willacy's claim that the circuit court erred by denying his later-filed motion for extension of time to file his postconviction motion. This issue is untethered to any claim for relief from his judgment or sentence. As such, we find it is a nonappealable interlocutory order and decline to address it further.[7]

## B. Denial of Public Records Requests

During the hearing on the pre- and post-warrant motions, Willacy argued that the denial of his motions would violate his right to access public records under article I, section 24 of the Florida Constitution and his federal rights to due process and equal protection under the United States Constitution.

---

7. Even if this order could be considered, Willacy would be time-barred from seeking review because the time for filing a postconviction motion has expired.

Willacy sought from FDOC records related to executions carried out after March 1, 2025, and virtually every aspect of the lethal injection process, including: execution team training; execution logs, checklists, and compliance verification; the process of obtaining, handling, storing, preparing, and administering the lethal injection drugs; monitoring data; methods for assessing consciousness and confirming death; and post-execution debriefings.

From FDOC, the AG, the Governor, and the State Attorney, Willacy sought internal and interagency communications from March 6 to March 13, 2026, discussing his March 6 records request; the scheduling of his execution; or any communications regarding his death warrant. He asserted that any such records

> would demonstrate whether the interested agencies involved communicated regarding Chadwick Willacy's demand for public records filed on March 6, 2026; whether the interested agencies' silence regarding the records demand was due to advanced notice that the Governor would be signing Mr. Willacy's death warrant or in the alternative, if the signing of Mr. Willacy's death warrant was in response to Willacy's March 6th public records demand.
> [And the requests are also] reasonably calculated to lead to admissible evidence regarding whether [FDOC] continues to strategize means to avoid compliance with record demands and thus preventing the discovery of

evidence that is not in compliance with carrying out
executions in accordance with the lethal injection
protocol signed by the Secretary on February 18, 2025,
and whether noncompliance unnecessarily subjects Mr.
Willacy to suffering and cruelty in violation of the Eighth
and Fourteenth Amendments to the U.S. Constitution
and corresponding provisions of the Florida Constitution.

(Footnote omitted.)

The circuit court denied both motions. Though we ordinarily review such claims when raised in conjunction with a final order addressing the postconviction motion for an abuse of discretion, *see Heath v. State*, 426 So. 3d 1253, 1263 (Fla. 2026) (reviewing denial of a public records request for abuse of discretion (citing *Muhammad v. State*, 132 So. 3d 176, 200 (Fla. 2013))), *cert. denied*, No. 25-6746, 2026 WL 363902 (U.S. Feb. 10, 2026), in *Trepal*, this Court announced that it would utilize the certiorari review standard applied by the district courts of appeal in reviewing discovery orders:

Drawing upon the district courts' use of the writ of certiorari to provide an instructive model of how this Court may exercise its jurisdiction in such cases, we hold that to obtain relief an appellant must establish that the order compelling discovery does not conform to the essential requirements of law and may cause irreparable injury for which appellate review will be inadequate.

754 So. 2d at 707.[8]

The irreparable harm requirement has been codified in rule 9.142(c)(4)(F).  And on this point, Willacy has asserted that he cannot file a successive postconviction motion without the requested records.  Given the expedited timeline of this active warrant case, we will assume for the sake of argument that Willacy has satisfied a showing of irreparable harm.

However, Willacy has not demonstrated that the circuit court departed from the essential requirements of the law by denying his records requests.  As a result, we deny his petition.

As a preliminary matter, we agree with the circuit court's conclusion that all Willacy's requests were unrelated to any colorable claim for postconviction relief—the common objection

---

8.  "Generally speaking, irreparable harm cannot be speculative, but must be real and ascertainable."  *Wal-Mart Stores E., L.P. v. Endicott*, 81 So. 3d 486, 490-91 (Fla. 1st DCA 2011) (citing *Holden Cove, Inc. v. 4 Mac Holdings, Inc.*, 948 So. 2d 1041, 1042 (Fla. 5th DCA 2007)).  "However, irreparable harm in the discovery of confidential information presents an exception to this general rule.  This type of harm is known as 'cat out of the bag' harm because once the documents are disseminated, a privacy . . . interest has been invaded which cannot be remedied on direct appeal."  *Id.*

advanced by each of the agencies. We find unpersuasive Willacy's counter—that denial was improper because nothing in rule 3.852 or the Florida Statutes expressly imposes such a requirement, and to do so places a higher burden on capital defendants than on other persons—because we have long recognized the requirement of a nexus between the requested records and a colorable claim for postconviction relief. *See, e.g., Sims*, 753 So. 2d at 70; *Dailey v. State*, 283 So. 3d 782, 792 (Fla. 2019); *Asay v. State*, 224 So. 3d 695, 700 (Fla. 2017). The reason we require some nexus is because the rule "is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief." *Sims*, 753 So. 2d at 70.

Willacy's argument that the term "colorable claim" is a "judicially imposed requirement" is a non-starter. The term follows from the rule's mandate—that requested records be relevant to a postconviction proceeding or reasonably calculated to lead to admissible evidence. In this context, the relevancy of the requested records, or their ability to be reasonably calculated to lead to admissible evidence, is directly measured by their connection to a colorable claim for relief. This limitation is particularly important in

post-warrant proceedings to ensure that records requests are not used as a delay tactic but reflect a focused investigation into a legitimate area of inquiry. *See id.* ("Rule 3.852 is not intended for use by defendants as . . . 'nothing more than an eleventh hour attempt to delay the execution rather than a focused investigation into some legitimate area of inquiry.' "). Willacy's claim that he should not be required to establish that the requested records relate to a colorable claim for postconviction relief thus fails. And the circuit court did not depart from the essential requirements of the law by requiring a showing of a colorable claim.

Turning to the specifics of Willacy's March 6 public records request, he sought records relating to nearly every aspect of the lethal injection process to determine whether FDOC was complying with its protocol and whether a constitutional violation might exist. That was a fishing expedition. He did not allege that the records would support a postconviction claim.

Willacy was merely " 'seeking to discover if possible claims exist, rather than records to support a colorable claim for postconviction relief,' an objective unsupported by law." *Heath*, 426 So. 3d at 1265 (quoting *Damas v. State*, 423 So. 3d 811, 823 (Fla.

- 14 -

2025)).  And so the circuit court properly denied this motion.

With respect to Willacy's March 18 public records requests, they suffer from the same defect as the first.  Willacy asserted that the records sought would demonstrate whether the agencies to which they were directed communicated regarding the March 6 records request or the signing of the death warrant, or if the signing of the death warrant was in response to the March 6 request.  Willacy theorized that such communications might show that FDOC avoided responding to his March 6 request to be able to "reframe" it as a post-warrant request requiring that it be related to a colorable claim.[9]

These assertions, even if true, do not establish a colorable claim for postconviction relief.  There is no prohibition on communication among executive branch agencies regarding a

_____

9.  Willacy argued below that any "colorable claim" requirement for capital postconviction defendants to obtain public records only applies to post-warrant requests because the cases cited by the agencies in their objections discussing the "colorable claim" requirement were post-warrant cases.  But we can discern no reason to treat a pre-warrant request for additional public records under rule 3.852(i) differently than a post-warrant request under the same provision.

capital defendant, a public records request, or the signing of a death warrant. To the extent Willacy is attempting to establish a claim that he was somehow improperly selected for a death warrant, "challenges to the Governor's absolute discretion to issue death warrants . . . do not present colorable claims for postconviction relief." *Id.* at 1264-65.

Like the March 6 request, the March 18 request also constituted a fishing expedition seeking records in the hope of uncovering a claim rather than supporting an existing one. Rule 3.852 does not permit such exploratory discovery.

Moreover, we have repeatedly rejected arguments that denials of requests under rule 3.852 for public records regarding Florida's administration of its lethal injection protocol or speculative interagency communications violate the right of access to courts, due process, or equal protection. *See, e.g.*, *King v. State*, SC2026-0336, 2026 WL 672101, at *5-6 (Fla. Mar. 10) (concluding that denial of similar public records request regarding lethal injection protocol did not violate due process on ground that records were necessary to support equal protection claim, where defendant failed to allege he was not afforded notice and opportunity to be heard on

public records demand; instead, circuit court held hearing on demand, and defense counsel presented argument on issue but never "asserted a divergence from protocol that would result in a manner of execution that would raise equal protection concerns"), *cert. denied*, 2026 WL 730666 (U.S. Mar. 16, 2026); *Kearse v. State*, 428 So. 3d 75, 81 (Fla. 2026) (rejecting claim that denying post-warrant public records requests for interagency communications based on speculation that state or county agency engaged in misconduct by contacting juror violated defendant's rights to due process and equal protection), *cert. denied*, No. 25-6926, 2026 WL 586905 (U.S. Mar. 3, 2026); *Damas*, 423 So. 3d at 823 (rejecting capital defendant's postconviction claim that denial of public records requests violated his rights to due process and access to courts where defendant was "seeking to discover if possible claims exist, rather than records to support a colorable claim for postconviction relief"); *Zakrzewski v. State*, 415 So. 3d 203, 211-12 (Fla.) (rejecting claim that denial of post-warrant requests under rule 3.852 for public records relating to lethal injection protocol violated defendant's rights to due process and access to courts where requests did not relate to a colorable claim for relief), *cert.*

*denied*, 146 S. Ct. 57 (2025). We likewise reject Willacy's arguments that the denial of the records requests at issue violated his rights of access to courts, due process, or equal protection.

In sum, we conclude that the circuit court did not depart from the essential requirements of the law because Willacy failed to establish that the requested records were tied to a colorable claim for postconviction relief. Having found no error, we need not address the agencies' other objections and deny Willacy's petition.

### C. Motion for Rehearing and In Camera Inspection

In his connected claim, Willacy asserts that the circuit court erred by failing to grant his motion for rehearing and request to conduct an in camera inspection of the requested records that the agencies objected to on the grounds that the records were exempt and confidential. Though we review for a departure from the essential requirements of the law in this case, we have recognized that granting an in camera inspection is within the circuit court's discretion, and have held that there is no abuse of that discretion when a defendant merely speculates that a colorable claim might be uncovered. *See Jones v. State*, 419 So. 3d 619, 628 (Fla.) ("Jones speculates that in camera inspection might have uncovered *Brady*

material.  But Jones has not identified any reason to believe that *Brady* material has been withheld, nor has he identified any authority requiring an in camera inspection or evidentiary hearing under these circumstances.  We cannot find that the circuit court abused its discretion here." (footnote omitted)), *cert. denied*, 146 S. Ct. 79 (2025).

Though Willacy cites *Everglades Law Center, Inc. v. South Florida Water Management District*, 290 So. 3d 123, 124 (Fla. 4th DCA 2019), for the proposition that the circuit court's failure to conduct an in camera review of the subject record amounted to "fundamental error," *Everglades Law Center* is inapposite because it was not a capital postconviction case, but rather a case about the statutory mediation communication exemption under sections 44.102(3) and 44.405(1), Florida Statutes (2017).

Willacy's requests come under rule 3.852 and the corresponding Florida Statutes applicable only to public records in capital postconviction cases.  These provisions set forth a streamlined method for submitting records throughout capital proceedings into a records repository by certain deadlines for the purpose of providing an orderly and "carefully tailored discovery

rule for public records production ancillary to rule 3.850 and 3.851 proceedings." *Sims*, 753 So. 2d at 69 (quoting *In re Amends. to Fla. R. Crim. P.—Cap. Postconviction Pub. Recs. Prod.*, 683 So. 2d 475, 476 (Fla. 1996)). While in camera inspection of exempt or confidential records is permitted, whether to grant in camera inspection is at the discretion of the circuit court in capital postconviction proceedings.[10]

Thus, we reject Willacy's suggestion that an in camera inspection was required. And given our conclusion that the circuit court did not err in denying Willacy's public records requests because he hoped to uncover a claim rather than to support one, Willacy has likewise failed to demonstrate how the circuit court

---

10. The current version of section 27.7081(11)(a)-(b) explicitly places the decision to "[c]ompel or deny disclosure of records" or "[c]onduct an inspection in camera" in a capital postconviction case within the sound discretion of the trial court. § 27.7081(11)(a)-(b), Fla. Stat. (2025) ("In proceedings under this section the trial court **may**: (a) Compel or deny disclosure of records. (b) Conduct an inspection in camera." (emphasis added)). "Per the 'Mandatory/Permissive Canon,' the word 'may' is commonly treated as a permissive word granting discretion." *Boca Ctr. at Mil., LLC v. City of Boca Raton*, 312 So. 3d 920, 923 (Fla. 4th DCA 2021) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012)); *see also City of Miami v. Gonzalez*, 419 So. 3d 677, 685 (Fla. 3d DCA 2025) (quoting same).

erred by denying his request for an in camera inspection and rehearing. Therefore, we deny relief on this issue.

### III. Petition for Writ of Habeas Corpus

In his habeas petition, Willacy repeats his claim that the denials of both his public records requests violate his rights to due process, equal protection, and access to courts. We deny his petition because orders denying public records requests are not cognizable in a petition for habeas corpus. *See Johns v. Wainwright*, 253 So. 2d 873, 874 (Fla. 1971) (habeas corpus is not a substitute for certiorari). Accordingly, Willacy is not entitled to relief.

### IV. Conclusion

We deny Willacy's petition seeking review of the circuit court's orders denying his requests for public records and rehearing/in camera inspection, and we deny his petition for writ of habeas corpus. We dismiss his appeal of the circuit court's order denying his motion for an extension of time. We also deny his request for oral argument. No motion for rehearing will be entertained by this

Court.[11]

It is so ordered.

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., concurs in result.
TANENBAUM, J., concurs in part and dissents in part with an opinion.

TANENBAUM, J., concurring in part and dissenting in part.

The defendant's judgment of conviction and death sentence became absolutely final when this court issued its mandate affirming them in 1997. There has not been a pending post-conviction motion attacking the judgment or sentence since 2020, when the trial court rendered its order denying the last of the defendant's successive motions under rule 3.851, an order that this court affirmed in 2021. This court, in turn, lacks jurisdiction in case number 26-0519. The court has no constitutional authority to consider, as a matter of appellate review, the defendant's last-minute request to review the trial court's run-of-the-mine refusal to compel state agencies to disclose public records under section

_____

11. Because the time for filing a successive postconviction motion has expired, Willacy's postconviction proceedings in Florida are now final.

- 22 -

27.7081, Florida Statutes, in an otherwise closed criminal case with no collateral relief claim pending. I dissent to the extent the court purports to exercise jurisdiction in case number 26-0519.[12]

Our jurisdiction to directly review any trial court order is severely limited. *See* Art. V, § 3(b)(1)–(2), (5), Fla. Const. In death cases, we have the authority to "hear appeals from *final judgments* of trial courts *imposing the death penalty.*" *Id.* (b)(1) (emphases supplied). The constitution, then, ties our appellate review authority to the trial court's final order adjudicating the defendant guilty of capital murder and imposing a sentence of death. If a trial court's order does not fit this bill, we lack appellate jurisdiction under subsection (b)(1).

One might fairly ask, "What about an order denying or

---

12. Regarding the petition for habeas relief in case number 26-0526—over which we do have jurisdiction—I concur in the denial of relief. His claims about being unable to access additional records are not cognizable as due-process claims, his claimed right to any additional records being ancillary to a nonexistent post-conviction proceeding. *Cf. Tanzi v. State,* 407 So. 3d 385, 391–92 (Fla.) (rejecting similar rights claim), *cert. denied, Tanzi v. Dixon,* 145 S. Ct. 1914 (2025). In any event, his access to additional records has nothing to do with the legality of the process that led to his conviction and death sentence. The claims cannot support habeas here.

granting a post-conviction motion filed under rule 3.851?" This court previously claimed for itself the authority to review such orders. *See State v. Fourth Dist. Ct. of Appeal*, 697 So. 2d 70, 71 (Fla. 1997). And that claimed authority was consistent with longstanding jurisprudence.

To obtain collateral relief from a criminal judgment or sentence, a defendant historically would do so via a writ of error *coram nobis.* "The office of the writ of error coram nobis is to bring to the attention of the court, for correction, an error of fact-one not appearing on the face of the record, unknown to the court or the party affected, and which, if known in season, would have prevented the rendition of the judgment challenged." *Lamb v. State*, 107 So. 535, 538 (Fla. 1926); *see also Russ v. State*, 95 So. 2d 594, 597 (Fla. 1957) (explaining that to obtain a writ, the "showing must be such that if the matters shown had been before the trial court when judgment was entered, the court would have been precluded from entering the judgment").

Once the judgment had been affirmed on appeal, however, "the trial court [was] without authority to consider an application for a writ of error coram nobis, unless permission [was] duly given by the

appellate court that affirmed the judgment." *Lamb*, 107 So. at 540. That permission was necessary because "the affirmed judgment [was] also the judgment of the appellate court, and the lower court [was] without power to review the affirmed judgment or to impair its validity or effect." *Id.* at 539–40; *see also Russ*, 95 So. 2d at 597 (explaining that the supreme court's granting leave on petition "is equivalent to an order or mandate that the trial court allow the writ, that it determine the truth of the facts alleged in the petition and that if they be established as being true then the judgment should be set aside and new proceedings be had").

Florida Rules of Criminal Procedure 3.850 and 3.851 now serve as streamlined procedural substitutes for the writ. *Cf. Richardson v. State*, 546 So. 2d 1037, 1039 (Fla. 1989) (noting how rule 3.850 has effectively absorbed most claims that could be brought under either *habeas corpus* or error *coram nobis*); *Wood v. State*, 750 So. 2d 592, 595 (Fla. 1999) (noting similarity between the relief to be obtained under the writ and under rule 3.850). S*ee generally In re Rule of Crim. Proc. 3.851 (Collateral Relief After Death Sentence has been Imposed)*, 626 So. 2d 198, 199 (Fla. 1993) (adopting new rule 3.851 but noting that the "proceedings and

grounds for postconviction relief remain as provided under Florida Rule of Criminal Procedure 3.850"); *In re Rules Governing Cap. Postconviction Actions*, 763 So. 2d 273, 274 (Fla. 2000) (readopting rule 3.851 as it existed prior to its legislative repeal). Because a motion filed under rule 3.851 attacks the underlying absolutely final judgment the same way a *coram nobis* proceeding did, this court naturally would have jurisdiction to consider an appeal from an order denying relief from the judgment (with which our affirmance in the initial appeal would have merged), just as this court earlier had jurisdiction to grant the trial court leave to entertain the writ.

The problem here is that the defendant did not file a motion for postconviction relief under rule 3.851 in the trial court, and he is not before this court collaterally attacking the judgment and imposition of a death sentence that we previously affirmed. Instead, the defendant purports to appeal only a trial court order denying his demand for additional public records under section 27.7081(8) and Florida Rule of Criminal Procedure 3.852.

To be sure, the statute creates a limited substantive right for a criminal defendant sentenced to death, and rule 3.852 can only

implement this right as legislatively established, not build upon it to create an even broader right. The Legislature, in turn, was clear that the statute "does not affect, expand, or limit the production of public records for any purpose other than use in a proceeding held pursuant to Rule 3.850 or Rule 3.851, Florida Rules of Criminal Procedure." § 27.7081(2), Fla. Stat. In other words, the substantive right the Legislature created is not a stand-alone right that could support an independent cause of action in the trial court; it, like its implementing procedural rule, establishes a means of public records discovery "*ancillary to* proceedings pursuant to rules 3.850 and 3.851." *Amends. to Fla. Rules of Crim. Proc. 3.852 (Cap. Postconviction Pub. Recs. Prod.) & Rule 3.993 (Related Forms)*, 754 So. 2d 640, 643 (Fla. 1999) (emphasis supplied) (citing *In re Amend. to Fla. Rules of Crim. Proc.-Cap. Postconviction Pub. Recs. Prod.*, 683 So. 2d 475, 476 (Fla. 1996)).[13]

---

13. Not that it makes much difference here, but because the statutory right is only a discovery right and does not establish a separate right of action, an order on a motion pursuing that right could not be a "final order." *Cf. State v. White*, 24 So. 160, 165 (Fla. 1898) (describing a final judgment as "dispos[ing] of every question involved in the case," leaving "nothing open for future decision," contemplating no "further action [] to be had in the cause, other

As noted at the top, a careful reading of Article V, section 3(b)(1) demonstrates that our jurisdiction is dependent on there being a challenge to the judgment imposing a death sentence—either directly (on original appeal) or indirectly (on review of a denial or grant of collateral relief). The defendant here has lodged no such attack on the judgment, meaning there is no proceeding currently pending in the trial court (*i.e.*, no active, cognizable claim against the validity of the judgment and death sentence) that will lead to a final order appealable to this court under our limited constitutional authority.

An active death warrant does not give us extraordinary appellate review powers under the Florida Constitution, and it does not give rise to some extralegal proceeding in the trial court over

---

than to enforce the decree rendered"); *State Rd. Dep't v. Crill*, 128 So. 412, 414–15 (Fla. 1930) (characterizing final, appealable judgment as one that "determines the merits of the controversy or the rights of the parties and leaves nothing for future determination," as one that "adjudicates the *merits of the cause and disposes of the action*" and "puts an end to the *suit*" (citations omitted)); *Hillsboro Plantation v. Plunkett*, 55 So. 2d 534, 536 (Fla. 1951) ("A judgment is 'final' for the purposes of an appeal when it terminates a litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.").

which we then have plenary authority. And rule 3.851(h) does not by its terms even contemplate more expansive jurisdiction once the death warrant is signed; it simply establishes an expedited yet orderly schedule *if* the defendant chooses to file one more motion for post-conviction relief, even one that is otherwise procedurally barred.[14]

---

14. As this court previously has stated, discovery under the statute and rule require there to be "a colorable claim for postconviction relief"; it is not a "procedure authorizing a fishing expedition for records" that the defendant hopes might give him a basis to assert a colorable claim that he currently is not aware of. *Sims v. State*, 753 So. 2d 66, 70 (Fla. 2000). The statutory discovery regime also is not to be used merely as "an eleventh hour attempt to delay the execution rather than a focused investigation into some legitimate area of inquiry." *Id.* at 70. A defendant already possessing a good-faith basis for post-conviction relief would file a motion saying so and *then* seek discovery to further prove his claim. By contrast, a demand to compel—without a pending rule 3.851 motion—submitted only after a death warrant is signed, fairly can be characterized as a pre-motion fact-finding expedition seeking to delay execution. Yet this court risks giving imprimatur to the approach by wholly resting its purported exercise of jurisdiction on it. The truth is, the trial court utterly lacks jurisdiction to consider such a demand in a closed criminal case. When a defendant asks the trial court to compel production under the statute, in the absence of a pending rule 3.851 motion, the better approach would be for the State to seek a writ of prohibition directed to the trial court from the supervisory district court of appeal.

Put another way, an active death warrant, by itself, does not reopen the closed criminal case that produced the conviction and death sentence. The warrant, in fact, has the opposite legal effect, signaling that the condemned defendant has completed his direct appeal, his initial post-conviction challenge, and his pursuit of federal habeas relief (if any). *See* § 922.052(2), Fla. Stat. (requiring the Governor to issue a death warrant upon the supreme court clerk's certification to this effect and completion of the clemency process). Even though a death sentence has been imposed, we operate like any other appellate court, with only the jurisdiction specified in the constitutional text—no more, no less.[15] Absent an

---

15. Cases like *Sims v. State*, 753 So. 2d 66 (Fla. 2000), and *Trepal v. State*, 754 So. 2d 702 (Fla. 2000)—and the cases on which the latter relies—seem to presume this court's "plenary" authority to review nearly all orders pertaining to a defendant sentenced to death, regardless of the procedural posture of the underlying criminal case. None of those cases provide any meaningful textual analysis to support the proposition, making the proposition highly suspect. *See, e.g.*, *Trepal*, 754 So. 2d at 705–06 (acknowledging that "[t]he current practice for this Court is to occasionally grant review of interlocutory orders in cases involving death-sentenced defendants" though it has "been less than precise in defining our authority to grant such review" but then, as authority, just relying on that history of "accepting jurisdiction in the instant scenario [] absent an express statement of how the Court determines whether to exercise its jurisdiction"). It is worth noting, though, that *Trepal* is what prompted our adoption of Florida Rule of Appellate

attack on the judgment and death sentence previously affirmed, this court's appellate jurisdiction under section 3(b)(1) is not implicated in any way.[16]

Florida Rule of Appellate Procedure 9.142 cannot supply a basis for jurisdiction that we do not otherwise have. Jurisdiction being a matter of substantive law, this court cannot use its rulemaking authority to create or expand its jurisdiction. Rule 9.142(c), properly understood, simply implements this court's extant constitutional authority to issue "all writs necessary to the complete exercise of its jurisdiction." Art. V, § 3(b)(7), Fla. Const. Indeed, it has all the markings of a certiorari proceeding. *See* Fla.

---

Procedure 9.142(c). *See Amend. to the Fla. Rules of App. Proc. (Rule 9.142)*, 837 So. 2d 911 (Fla. 2002). And *Trepal* at least involved review of a discovery order rendered in the context of a pending post-conviction motion filed in the trial court. *See* 754 So. 2d at 703. At all events, the scope of our claimed jurisdiction in death cases should be revisited to ensure that we are strictly adhering to the constitution's jurisdictional prescriptions.

16. There is a clear distinction between our plenary appellate jurisdiction under section 3(b)(1) and our habeas authority under section 3(b)(9). These are different proceedings, conducted under very different standards for entitlement to relief. The habeas petition that the defendant filed in separate case number 26-0526 does not provide a basis for jurisdiction in case number 26-0519.

R. App. P. 9.142(c)(2), (3)(A), (5), (6).  Even if this court does not

want to label it a proceeding seeking review on a writ of certiorari,

that is precisely what the proceeding is.[17]

There is no inherent constitutional problem with rule 9.142's

subdivision (c); but, as this court has observed, the constitution's

Article V, section 3(b)(7), by its own terms, requires there to be an

independent jurisdictional hook supporting the court's authority to

issue an extraordinary writ under that constitutional provision.  *See*

*St. Paul Title Ins. Corp. v. Davis*, 392 So. 2d 1304, 1305 (Fla. 1980)

("The all writs provision of section 3(b)(7) does not confer added

appellate jurisdiction on this Court, and this Court's all writs power

cannot be used as an independent basis of jurisdiction as petitioner

---

17.  Oddly, this court disclaimed, without explanation, having "jurisdiction to entertain petitions for common law certiorari." *Trepal*, 754 So. 2d at 706.  That presumably references the April 1980 revision to Article V that removed a provision giving this court the authority to "review by certiorari . . . any interlocutory order passing upon a matter, which upon final judgment would be directly appealable to the supreme court."  The import of this aspect of the revision is ambiguous, given that the same revision left intact the text that remains as section 3(b)(7)—the "all writs" provision.  At all events, the court cannot disclaim its certiorari authority yet establish a process by which it can grant interlocutory relief that is in every way (including the standard for granting relief) identical to the writ of certiorari, save for the labelling.

is hereby seeking to use it."). The court, in addressing the defendant's claim on the merits, now purports (without expressly saying so) to exercise authority under section 3(b)(7)—which rule 9.142(c) *necessarily* implements—*without* the "independent basis of jurisdiction" that we typically demand before we will even entertain a petition for such relief. *See Williams v. State*, 913 So. 2d 541, 543 (Fla. 2005) (dismissing for lack of jurisdiction because "the all writs provision does not constitute a separate source of original or appellate jurisdiction but rather operates in furtherance of the Court's 'ultimate jurisdiction,' conferred elsewhere in the constitution").

The absence in this case, then, of a motion under rule 3.851 pending in the trial court—one that attacks either the conviction or the death sentence that we previously affirmed—wholly obviates this court's jurisdiction to address any of the merits in case number 26-0519. I would dismiss that case in its entirety.

An Appeal from the Circuit Court in and for Brevard County,
 Kathryn Speicher, Judge
 Case No. 051990CF016062AXXXXX
And an Original Proceeding – Habeas Corpus

Eric C. Pinkard, Capital Collateral Regional Counsel, Melody Jacquay-Acosta, Assistant Capital Collateral Regional Counsel, Ann

Marie Mirialakis, Assistant Capital Collateral Regional Counsel, Joshua P. Chaykin, Assistant Capital Collateral Regional Counsel, and Mahham Syed, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

 for Appellant/Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, Michael W. Mervine, Special Counsel, Assistant Attorney General, and Jonathan S. Tannen, Senior Assistant Attorney General, Tampa, Florida,

 for Appellee/Respondent