753 So.2d 66 (2000)
Terry Melvin SIMS, Appellant,
v.
STATE of Florida, Appellee.
No. SC 96731.
Supreme Court of Florida.
February 8, 2000.
*67 Richard Jorandby, Public Defender, and Steven H. Malone, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida; and Mark E. Olive and Timothy P. Schardl, Special Assistant Public Defenders of the Law Offices of Mark E. Olive, P.A., Tallahassee, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Judy Taylor Rush and Kenneth S. Nunnelley, Assistant Attorneys General, Daytona Beach, Florida, for Appellee.
PER CURIAM.
Terry Melvin Sims, while under a death warrant, filed and sent to a number of agencies and individuals requests for public records pursuant to Florida Rule of Criminal Procedure 3.852.[1] At least two of the agencies filed objections to the requests, and the defendant filed a motion to compel production and a motion to modify the trial court's scheduling order.[2] By order dated October 12, 1999, the trial court denied Sims' motion to compel and extended the time for filing a successive postconviction motion to October 13, 1999. Sims appeals this order. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the following reasons we affirm the trial court's denial of the motion to compel.
On September 29, 1999, Sims' counsel mailed letters to twenty-three agencies, requesting public records.[3] The Department *68 of Corrections (DOC) objected to the requests on the grounds: (1) that Sims had not requested documents from DOC prior to the instant requests and therefore was not authorized under Florida Rule of Criminal Procedure 3.852(h)(3) to make such requests at this late date; and (2) that the request was overbroad, unduly burdensome and failed to show the requested documents were reasonably calculated to lead to the discovery of admissible evidence. The DOC also objected to several of Sims' requests on the ground that they were not public records. The Seminole County State Attorney's Office objected to Sims' requests for records related to Robert Anthony Preston. It argued the only materials it had on Preston were boxes of records relating to Preston's conviction, direct appeal and 3.850 proceeding, which Sims had failed to indicate were even remotely relevant to his case.
On October 8, 1999, the trial court held a telephonic hearing on the various objections to the public records requests. At that hearing, the Duval County State Attorney's Office objected to Sims' requests, arguing Sims had not previously requested the documents and that Florida Rule of Criminal Procedure 3.852(h)(3) only allowed additional requests for records where records had previously been requested.
The trial court ordered the DOC to produce printouts from its database on all identifiable individuals listed in Sims' requests and all records of nonconfidential medical and psychological reports. Confidential reports had to be sealed and could not be inspected absent a court order. Additionally, the DOC was ordered to make its facilities available to Sims' counsel. The court further ordered the Duval County State Attorney's Office to search its closed files for any of the individuals named in Sims' requests and to produce any file with Sims' name on it. The Seminole County State Attorney's Office agreed to make Preston's records available for review.
On October 11, 1999, Sims' counsel filed a motion to compel production of public records. Sims' counsel stated that as of the date of filing, only the Longwood Police Department and the Seminole County State Attorney's Office had sent records to the repository. The motion further alleged the Longwood Police Department's records were incomplete and counsel had not yet had an opportunity to fully inspect the Seminole County State Attorney's Office's records to determine whether those records were complete. Sims also filed a motion to modify the court's scheduling order due to the agencies' failures to turn over the requested records. Previously, the trial court had instructed the parties to file all motions by October 12, 1999.
On October 12, 1999, the trial court denied the motion to compel and granted Sims a twenty-four hour extension for filing motions. Under the trial court's ruling, Sims had until 5 p.m. on October 13, 1999, to file whatever motions he intended to file. As for the public records issue, the court found that Sims' requests appeared to be an "eleventh hour attempt to delay the execution rather than a focused investigation into some legitimate inquiry." The trial court reasoned that the trial in this case took place over twenty years ago, and Sims' counsel had failed to request the records in the following years. The trial court also addressed Sims' counsel's claim that he had been prevented from seeking public records due to rule changes in October 1998 and July 1999. The court explained the rule changes do not explain why Sims' counsel failed to seek public records prior to October 1998 or why counsel failed to seek relief from the rule changes. This appeal followed.
*69 In 1996, based on this Court's study of problems with the procedures pertaining to the production of public records in capital cases at the postconviction level, we promulgated Florida Rule of Criminal Procedure 3.852. See In re Amendment to Florida Rules of Criminal Procedure Capital Postconviction Public Records Production, 683 So.2d 475 (Fla.1996). We said, "This rule is a carefully tailored discovery rule for public records production ancillary to rule 3.850 and 3.851 proceedings." Id. at 476. The 1998 Legislature repealed rule 3.852 and enacted section 119.19, Florida Statutes (Supp.1998),[4] to address the problems with public records productions in the capital postconviction setting. And, in response to the new statute, we adopted on an emergency basis the proposed rule 3.852 submitted by the Special Committee on Florida Rule of Criminal Procedure 3.852. See Amendments to Florida Rules of Criminal Procedure, 723 So.2d 163 (Fla.1998). After receiving comments and proposed changes, as well as holding oral argument, we made amendments to the rule and again stated, "This rule is a discovery rule for public records production ancillary to proceedings pursuant to rules 3.850 and 3.851." Amendments to Florida Rules of Criminal Procedure, 754 So.2d 640, 643 (Fla.1999).
This is the rule under which Sims filed his public records requests.[5] Florida Rule of Criminal Procedure 3.852(h)(3), provides in pertinent part:
(h) Cases in Which Mandate was Issued Prior to Effective Date of Rule.
. . . .
(3) Within 10 days of the signing of a defendant's death warrant, collateral counsel may request in writing the production of public records from a person or agency from which collateral counsel requested public records. A person or agency shall copy, index, and deliver to the repository any public record:
(A) that was not previously the subject of an objection;
(B) that was received or produced since the previous request; or
(C) that was, for any reason, not produced previously.

Id. (emphasis added).[6] Based on the emphasized language, the State argues Sims' *70 requests for production of public records are overbroad because he failed to demonstrate that he had "previously" requested public records from these agencies and individuals. We agree and affirm the decision of the trial court.
The language of section 119.19 and of rule 3.852 clearly provides for the production of public records after the governor has signed a death warrant. However, it is equally clear that this discovery tool is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief. To prevent such a fishing expedition, the statute and the rule provide for the production of public records from persons and agencies who were the recipients of a public records request at the time the defendant began his or her postconviction odyssey. The use of the past tense and such words and phrases as "requested," "previously," "received," "produced," "previous request," and "produced previously" are not happenstance.
This language was intended to and does convey to the reader the fact that a public records request under this rule is intended as an update of information previously received or requested. To hold otherwise would foster a procedure in which defendants make only a partial public records request during the initial postconviction proceedings and hold in abeyance other requests until such time as a warrant is signed. Such is neither the spirit nor intent of the public records law. Rule 3.852 is not intended for use by defendants as, in the words of the trial court, "nothing more than an eleventh hour attempt to delay the execution rather than a focused investigation into some legitimate area of inquiry."
In this case, the defendant made public records requests of twenty-three[7] agencies or persons. There is no indication in the record that most of these agencies had been the recipients of prior requests for public records. The record, read in the light most favorable to this defendant, demonstrates that the Seminole County Sheriffs Office was the recipient of a prior public records request via a letter dated April 19, 1990. Likewise, the Seminole County State Attorney's Office, by letter dated April 24, 1990, received a prior request for public records. On the other hand, the DOC objected to the request for public records and alleged that it had not been previously asked to produce any public records. The Duval County State Attorney's Office also objected to the production of public records arguing it had lot been the recipient of a prior request. There are no other documents or statements in the record demonstrating any prior requests for public records made to the other agencies or persons for which requests are now being made. The record simply does not support a conclusion that Sims is entitled to public records pursuant to rule 3.852.
Any concerns that this construction of rule 3.852(h)(3) may lead to harsh results in the nonwarrant situation should be ameliorated by rule 3.852(i), which is patterned on section 119.19(9), Florida Statutes (1999).[8] This provision allows collateral *71 counsel to obtain additional records at any time if collateral counsel can establish that a diligent search of the records repository has been made and "the additional public records are either relevant to the subject matter of the postconviction proceeding or are reasonably calculated to lead to the discovery of admissible evidence." Fla. R.Crim. P. 3.852(i)(1).[9] This provision expressly states that it allows capital defendants to obtain records "in addition to those provided by this rule," including subdivision (h) of the rule. See Fla. R.Crim. P. 3.852(i)(2). Thus, the ability of capital defendants to obtain records under rule 3.852(i) is not contingent upon the signing of a death warrant.
Thus, rule 3.852(i) provides a procedure to ensure that capital defendants have an opportunity to obtain needed public recordsupon a proper showing being made to the trial court. In this case, Sims did not make the requisite showing for the additional records.
Sims' judgment and sentence have been affirmed by this Court. His requests for 3.850 relief and state habeas relief have been denied. Sims has taken his case to the federal courts by the filing of a federal habeas petition and appeal to the Eleventh Circuit. He has sought certiorari in the United States Supreme Court on three occasions. Sims' judgment and sentence are entitled to a presumption of correctness. It is incumbent upon him to demonstrate an entitlement to further review by the trial court or this Court. Based on the record before us, Sims has failed to demonstrate error in the trial court's denial of his motion to compel.
For the reasons stated above, we affirm the order of the trial court denying Sims' motion to compel the production of public documents under Florida Rule of Criminal Procedure 3.852 and section 119.19, Florida Statutes (Supp.1998).
It is so ordered.
HARDING, C.J., and SHAW, WELLS, PARIENTE, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., concurs with an opinion, in which SHAW, J., concurs.
ANSTEAD, J., concurring.
I concur in the majority opinion which, in its essence, stands for the proposition that there should be an orderly scheme for discovery in postconviction proceedings that facilitates early disclosure and discourages the filing of broad, open-ended discovery requests only after a death warrant has been executed.[10] Indeed, that is also the commendable thrust of the Legislature's action in creating a central records repository for capital collateral litigation and mandating that agencies file copies of all records they have pertaining to a capital case in that registry. In turn, those records are readily available to collateral counsel and, in addition, there is a fail-safe mechanism for counsel to seek the production of additional records under rule 3.852(i).
Notwithstanding our ruling in this particular case, it is important that we all remember that access to public records is guaranteed by the Florida Constitution regardless of whether that access is sought by a death row inmate, a disinterested citizen or a member of the media. We *72 need to be very careful that we not end up with an outcome where a death-sentenced defendant, whose life may literally be affected, is barred from enforcing his constitutional right as a citizen to access to public records that any other citizen could routinely access. Indeed, that was the thrust of our initial pronouncement that our rule of discovery in capital postconviction proceedings was never intended to, and, indeed, could not, diminish a citizen's constitutional right to access to public records. See In re Amendment to Florida Rules of Criminal Procedure-Capital Postconviction Public Records Production, 683 So.2d 475, 477 (Fla.1996) (Anstead, J., specially concurring) ("As noted by the majority opinion, this rule in no way diminishes the right of an individual Florida citizen, including a capital defendant, to access to public records pursuant to article I, section 24, Florida Constitution, and chapter 119, Florida Statutes (1995).").
SHAW, J., concurs.
NOTES
[1] The discussion of public records in this opinion is based on procedures as they existed prior to the repeal of rule 3.852 by the Legislature effective January 14, 2000. But see In re Rules Governing Capital Postconviction Actions, No. SC00-242, ___ So.2d ___, 2000 WL 140900 (Fla. Feb. 7, 2000)(readopting Florida Rules of Criminal Procedure 3.850, 3.851, and 3.852 nunc pro tunc January 14, 2000, until June 30, 2000, or when new rules are adopted).
[2] At the conclusion of the status conference held on October 5, 1999, the trial court directed Sims to file any successive motion under Florida Rule of Criminal Procedure 3.850 by 5 p.m. on October 12, 1999. The trial court also indicated that any hearing would take place on October 15, 1999, and October 16, 1999, if necessary.
[3] These agencies include: (1) Jacksonville Sheriff's Office; (2) Volusia County Administration Center; (3) Panama City Police Department; (4) Florida Department of Law Enforcement (FDLE)-Tallahassee; (5) Escambia County Sheriff's Office; (6) St. John's County Sheriff's Office; (7) Altamonte Springs Police Department; (8) Seminole County State Attorney's Office; (9) Seminole County Sheriff's Office; (10) Sanford Police Department; (11) Gainesville Police Department; (12) FDLE-Orlando; (13) Longwood Department of Public Safety; (14) Longwood Police Department; (15) Union Correctional Institution (UCI); (16) Florida State Prison; (17) Pretrial Detention Facility-Jacksonville; (18) Department of Corrections; (19) St. John's County Detention Center; (20) Orange County Jail; (21) Escambia County Jail; (22) Seminole County Jail; and (23) Duval County State Attorney's Office.
[4] Section 119.19(14), Florida Statutes (Supp. 1998), provides:

This section pertains only to the production of records for capital postconviction defendants and does not change or alter any time periods specified in Rule 3.850 or Rule 3.851, Florida Rules of Criminal Procedure. Furthermore, this section does not affect, expand, or limit the production of public records for any purposes other than use in a proceeding held pursuant to Rule 3.850 or Rule 3.851, Florida Rules of Criminal Procedure.
[5] Sims' conviction for first degree murder and sentence of death were affirmed by this Court in Sims v. State, 444 So.2d 922 (Fla. 1983). The United States Supreme Court denied certiorari. See Sims v. Florida, 467 U.S. 1246, 104 S.Ct. 3525, 82 L.Ed.2d 832 (1984). We also affirmed the trial court's denial of postconviction relief. See Sims v. State, 602 So.2d 1253 (Fla.1992). The United States Supreme Court denied a petition for writ of certiorari. See Sims v. Florida, 506 U.S. 1065, 113 S.Ct. 1010, 122 L.Ed.2d 158 (1993). Sims next filed a petition for writ of habeas corpus in this court, which we denied. See Sims v. Singletary, 622 So.2d 980 (Fla. 1993). Sims filed a federal habeas petition in the United States District Court for the Middle District of Florida. That court denied relief as to his conviction, but granted relief as to the sentence. The Eleventh Circuit Court of Appeals affirmed the denial of relief on the conviction and reversed the grant of relief on the sentence. See Sims v. Singletary, 155 F.3d 1297 (11th Cir.1998). The United States Supreme Court denied certiorari review on June 21, 1999. See Sims v. Moore, 527 U.S. 1025, 119 S.Ct. 2373, 144 L.Ed.2d 777 (1999). A death warrant was signed by the governor on September 23, 1999. The execution was scheduled for October 26, 1999, but stayed by order of this Court.
[6] Section 119.19(8)(e), Florida Statutes (Supp.1998), uses similar language and provides, in pertinent part:

Within 10 days of the signing of the death warrant, capital collateral regional counsel or contracted private counsel may request of a person or agency that the defendant has previously requested to produce records any records previously requested to which no objection was raised or sustained, but which the agency has received or produced since the previous request or which for any reason the agency has in its possession and did not produce within 10 days of the receipt of the previous notice or such shorter time period ordered by the court to comply with the time for the scheduled execution. The person or agency shall produce the record or shall file in the trial court an affidavit stating that it does not have the requested record or that the record has been produced previously.
[7] It is difficult to say how many public records requests were actually made because at least one office, the Seminole County Sheriff's Office, received a package that contained 24 separate envelopes, and each was a separate request for the production of records.
[8] Section 119.19, Florida Statutes (1999), was also amended by the Legislature effective January 14, 2000.
[9] This subsection is largely incorporated into the recently enacted version of section 119.19(8). See Fla. CS/HB 1-A, § 3 (2000). However, the amendment shortens the time in which the trial court shall rule on collateral counsel's order from thirty to fifteen days. See id.
[10] Most of the issues raised herein have been rendered moot either by the trial court's subsequent grant of an evidentiary hearing, or by the Legislature's repeal of our discovery rule and the legislation it was predicated upon. Nevertheless, there remain serious issues with reference to access to public records since such access is provided for in Florida's Constitution and access to public records is an essential ingredient in any meaningful postconviction review.