# Supreme Court of Florida

––––––––––

No. SC2026-0574

––––––––––

**JAMES ERNEST HITCHCOCK,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

April 23, 2026

PER CURIAM.

James Ernest Hitchcock is a prisoner sentenced to death. The Governor signed a warrant for his execution, set to occur April 30, 2026. Hitchcock appeals the denial of his successive motion for postconviction relief. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.; *see also State v. Fourth Dist. Ct. of Appeal*, 697 So. 2d 70, 71 (Fla. 1997) (holding "that in addition to our appellate jurisdiction over sentences of death, we have exclusive jurisdiction to review all types of collateral proceedings in death penalty cases").

For the reasons below, we affirm the denial of postconviction relief and deny his motion for a stay of execution.

**I**

In 1976, James Ernest Hitchcock was indicted for murdering his brother Richard's thirteen-year-old stepdaughter. *Hitchcock v. State* (*Hitchcock I*), 413 So. 2d 741, 743 (Fla. 1982); *Hitchcock v. State* (*Hitchcock VI*), 755 So. 2d 638, 640 (Fla. 2000). Hitchcock was living with Richard and Richard's family—including the victim. On the night of the murder, Hitchcock watched television with Richard and his family until around 11:00 p.m. Hitchcock then left the house, went to Winter Garden, and drank beer and smoked marijuana with his friends.

Hitchcock told police post-arrest that he returned to the home around 2:30 a.m. and entered through a dining room window. He then went to the victim's room and had sexual intercourse with her. The victim told Hitchcock she was hurt and was going to tell her mother. The victim started to yell because Hitchcock would not let her leave the bedroom. Hitchcock then choked her and carried her outside. When she still refused to be quiet, Hitchcock choked and

beat the victim until she was silent and pushed her body into some bushes. He returned to the home, showered, and went to bed.

At trial in January 1977, Hitchcock recanted his prior statement to police confessing to the murder. Contrary to his prior statement, Hitchcock claimed that the victim let him into the house and agreed to have sexual intercourse. Hitchcock claimed that after having intercourse, Richard entered the bedroom, dragged the victim outside, and began choking her. Hitchcock said that by the time he got Richard away from the victim, she was already dead. According to Hitchcock, Richard said he did not mean to kill her, and that Hitchcock would cover up for Richard. In explanation for his prior admission, Hitchcock said he was trying to protect Richard.

The jury found him guilty of first-degree murder and recommended that he be sentenced to death. *Hitchcock I*, 413 So. 2d at 743. After weighing the aggravating and mitigating circumstances, the court agreed with the jury's recommendation and imposed the death penalty. *Id.*[1]

---

1. The court found three aggravating circumstances: (1) the murder was committed in the course of an involuntary sexual

We affirmed Hitchcock's judgment and sentence on direct

appeal in 1982, rejecting the many issues he raised. *Id.*[2] The U.S.

---

battery; (2) the purpose of the murder was to eliminate a witness to avoid arrest; and (3) the murder was especially heinous, wicked, or cruel. *Hitchcock I*, 413 So. 2d at 746.

2. Hitchcock argued the following in that direct appeal: (1) the trial court improperly restricted his presentation of evidence corroborating his defense theory, his impeachment of a key prosecution witness, and his explanation of his false confession; (2) the trial court improperly communicated with the jury during deliberations; (3) the exemption of mothers with young children from jury service denied his right to a jury drawn from a fair cross-section of the community; (4) the evidence was insufficient to convict him of first-degree murder because it did not show premeditation or felony murder; (5) the trial court erred by denying Hitchcock's motion for judgment of acquittal, claiming insufficiency of the evidence to show either premeditation or felony murder; (6) the trial court sentenced him to death because he exercised his right to a jury trial; (7) the conviction and sentence must be overturned because, before trial, he had no notice of the aggravating circumstances that the State intended to show and on which the judge and jury relied; (8) the trial judge improperly assessed the aggravating and mitigating factors; (9) the rape portion of section 921.141(5)(d), Florida Statutes (1977), is so vague and confusing as to be unconstitutional because the crime of "rape" no longer exists in this state ("Ch. 74–121, Laws of Florida, amended ch. 794, Fla. Stat., to replace the former rape statute with the crime of sexual battery." *Hitchcock I*, 413 So. 2d at 747 n.7); (10) section 921.141 unconstitutionally limits the consideration of mitigating factors and that he was improperly limited in presenting mitigating evidence; and (11) section 921.141 is unconstitutional on its face, that the death penalty is inconsistently applied, and that there are no standards for weighing aggravating and mitigating factors. *Hitchcock I*, 413 So. 2d at 744-48.

- 4 -

Supreme Court denied certiorari review. *Hitchcock v. Florida*, 459 U.S. 960 (1982).

In 1983 Governor Graham denied Hitchcock's clemency request and signed his death warrant. *Hitchcock v. State* (*Hitchcock II*), 432 So. 2d 42, 43 (Fla. 1983). Hitchcock then filed a motion to vacate his judgment and sentence under Florida Rule of Criminal Procedure 3.850. In the postconviction court, Hitchcock raised two claims[3] that the postconviction court summarily denied. Hitchcock appealed, repeating his claims made in the trial court and arguing the trial court erred in denying his motion. We affirmed, finding that the motion and record conclusively showed that Hitchcock was not entitled to relief. *Id.*

Hitchcock then petitioned for federal habeas relief. After the U.S. District Court for the Middle District of Florida denied relief and the Eleventh Circuit Court of Appeals affirmed, the U.S.

---

3. Hitchcock argued that his death sentence violated his Sixth, Eighth, and Fourteenth Amendment rights for two reasons: "[(1)] the then-current state of the law prevented his trial counsel from presenting nonstatutory mitigating evidence at his sentencing proceeding; and [(2)] the death penalty statute fail[ed] to channel jury discretion and permit[ted] the interjection of irrelevant factors into the sentencing process." *Hitchcock II*, 432 So. 2d at 43.

Supreme Court granted review. *Hitchcock v. Dugger*, 481 U.S. 393, 394 (1987). Hitchcock argued that he was sentenced to death under a Florida statute that operated in a way that prevented the sentencing jury and judge from considering relevant mitigating evidence—that being mitigating circumstances not listed in the statute. *Id.* The Supreme Court reversed, finding that in Hitchcock's case "the advisory jury was instructed not to consider, and the sentencing judge refused to consider, evidence of nonstatutory mitigating circumstances," all of which ran contrary to the requirements of *Skipper v. South Carolina*, 476 U.S. 1 (1986), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Lockett v. Ohio*, 438 U.S. 586 (1978) (plurality opinion), as Hitchcock was precluded from presenting all relevant mitigating evidence. *Hitchcock*, 481 U.S. at 398-99.

After the Supreme Court's decision in *Hitchcock v. Dugger*, 481 U.S. at 399, the State proceeded with a new penalty phase. *Hitchcock v. State* (*Hitchcock III*), 578 So. 2d 685, 688 (Fla. 1990). A jury again recommended sentencing Hitchcock to death. *Id.* The trial court imposed the death penalty after finding four aggravating

factors[4] and finding the aggravating factors to outweigh the

mitigation.[5]  *Id.*

After his resentencing, Hitchcock appealed his death sentence,

again raising many issues.[6]  We affirmed Hitchcock's death

_____

4.  The court found the crime was committed while Hitchcock was under sentence of imprisonment, was committed during a sexual battery, was committed to avoid or prevent arrest, and was especially heinous, atrocious, or cruel (HAC).  *Hitchcock III*, 578 So. 2d at 688.

5.  The court considered as mitigation Hitchcock's age, deprivations, character traits, and use of drugs and alcohol.  *Id.*

6.  He argued (1) the trial court improperly refused to grant his challenges for cause to three prospective jurors; (2) the trial court prevented him from presenting mitigating evidence; (3) the trial court erred in allowing the State to read into evidence the trial transcript of a hair analyst's testimony; (4) it was improper to introduce his original confession and a letter to his mother confessing to the murder; (5) testimony about the victim and her characteristics was improper; (6) he was prejudiced by having eight death row inmates testify on his behalf; (7) "the jurors' and potential jurors' knowledge of his previous sentence from pretrial publicity was unlawfully prejudicial and that the court's refusing his proposed instruction compounded that prejudice;" (8) the court erred in instructing the jury on the aggravating circumstance of murder committed during the commission of a felony because "[t]here is no conviction for sexual battery in this case;" (9) the court erred in finding four aggravating circumstances and that his death sentence is disproportionate; (10) instructing the jury in terms of "sexual battery" rather than "rape" is an ex post facto violation; (11) the trial court's finding of the "under sentence of imprisonment" aggravator was an ex post facto violation and constitutes double jeopardy; and (12) the delay between his arrest (1976) and

- 7 -

sentence, *id.* at 693, and the U.S. Supreme Court denied

Hitchcock's petition for writ of certiorari, *Hitchcock v. Florida*, 502

U.S. 912 (1991). But eight months later, the U.S. Supreme Court

granted petitions for rehearing and for writ of certiorari, vacating

the judgment and remanding the case to this Court for further

consideration in light of *Espinosa v. Florida*, 505 U.S. 1079 (1992).

*Hitchcock v. Florida*, 505 U.S. 1215 (1992).

On remand from the U.S. Supreme Court, we determined that

the trial court gave the jury an inadequate instruction on the

especially heinous, atrocious, or cruel (HAC) aggravator under

*Espinosa.* *Hitchcock v. State* (*Hitchcock IV*), 614 So. 2d 483, 484

(Fla. 1993). Because this Court could not determine the extent to

which the instruction factored into the jury's consideration of the

recommended sentence, we vacated Hitchcock's death sentence and

---

resentencing (1988) violates his right to a speedy trial and his due process rights and constitutes cruel and unusual punishment. *Hitchcock III*, 578 So. 2d at 688-93 (alteration in original). The Court added that Hitchcock argued some issues that did not merit discussion: unconstitutionality of the instruction on HAC; unconstitutionality of Florida's death penalty statute; and jury instructions regarding sympathy toward the defendant. *Id.* at 688 n.2.

directed the trial court to empanel a jury for a new penalty phase. *Id.*

Hitchcock was resentenced to death—following a unanimous jury recommendation—and he appealed to this Court. *Hitchcock v. State* (*Hitchcock V*), 673 So. 2d 859, 860 (Fla. 1996).[7] We again reversed and remanded for resentencing because "evidence portraying Hitchcock as a pedophile, including unverified allegations of Hitchcock's sexual abuse of a number of children, was erroneously made a feature of his resentencing proceeding" and "deprived Hitchcock of a fair sentencing." *Id.* at 860.

Hitchcock's third resentencing began in September 1996. *Hitchcock VI*, 755 So. 2d at 640. The jury recommended sentencing Hitchcock to death by a 10-2 vote. *Id.* The court sentenced Hitchcock to death after finding four aggravating circumstances.[8]

---

7. The trial court found four aggravators: (1) the capital felony was committed while Hitchcock was under a sentence of imprisonment; (2) the capital felony was committed while Hitchcock was engaged in the commission of a sexual battery; (3) the capital felony was committed for the purpose of avoiding a lawful arrest; and (4) the capital felony was HAC. *Hitchcock V*, 673 So. 2d at 861 n.2.

8. The court found that (1) the crime was committed by a person under sentence of imprisonment (parole); (2) the crime was

- 9 -

The court found one statutory mitigating factor, Hitchcock's age

(twenty).[9]  *Id.*

On appeal from this new death sentence, Hitchcock raised

eighteen claims.[10]  This Court rejected all his claims as either

---

committed during commission of the felony of sexual battery; (3) the crime was committed for the purpose of avoiding arrest; and (4) the crime was especially HAC.  *Hitchcock VI*, 755 So. 2d at 640.

9.  "As to nonstatutory mitigation, the court in an amended sentencing order assigned 'very little weight' to six circumstances surrounding the instant crime, 'some weight' to nine circumstances concerning Hitchcock's background, and 'some weight' to eight circumstances concerning Hitchcock's 'positive character traits.' " *Id.* at 640-41.

10.  Hitchcock claimed that: (1) the trial court erred in permitting the State to put into evidence a three-page narrative report concerning results of a psychological test; (2) the trial court erred in overruling the defense objection to the State's closing argument as to Hitchcock's mitigation evidence; (3) the trial court erred in overruling the defense objection to the State's argument as to a defense expert witness; (4) fundamental error occurred in the State's final argument to the jury; (5) resentencing is required because the judge in Hitchcock's new trial was removed from the bench during an investigation of bribery charges, and it was error for a substitute judge to rule on Hitchcock's motion for resentencing; (6) the trial court erred in instructing upon, allowing the State to argue, and finding the aggravating circumstance of avoiding or preventing arrest; (7) the trial court erred in denying Hitchcock's constitutional challenges to the sentence of imprisonment and felony-murder aggravating circumstances as applied; (8) the State failed to prove the felony-murder aggravating circumstance based on the underlying felony of rape or sexual battery, and this aggravating circumstance is unconstitutional; (9)

procedurally barred or without merit and affirmed. *Id.* at 641. The

U.S. Supreme Court denied Hitchcock's petition for writ of

certiorari. *Hitchcock v. Florida,* 531 U.S. 1040 (2000).

In 2001, Hitchcock filed a motion for postconviction DNA

testing under section 925.11, Florida Statutes, and Florida Rule of

Criminal Procedure 3.853. *Hitchcock v. State* (*Hitchcock VII*), 866

So. 2d 23, 25 (Fla. 2004). The postconviction court denied

Hitchcock's motion, finding that the motion did not "set forth the

evidentiary value of the evidence to be tested or explain how the

results would exonerate Defendant or mitigate his sentence." *Id.* at

---

the trial court erred in using the HAC aggravating circumstance and in giving an unconstitutional instruction as to HAC; (10) the trial court erred in refusing to instruct the jury as to improper doubling of aggravating circumstances; (11) the trial court erred in considering both the felony-murder and avoid-arrest aggravating circumstances; (12) the trial court's findings as to mitigation were deficient; (13) Hitchcock's death sentence is disproportionate; (14) the trial court erred in permitting testimony showing that his appellate attorney had represented Hitchcock on clemency; (15) the trial court erred in denying relief based on newly discovered evidence without considering corroborating evidence and circumstances; (16) the trial court (a substitute judge) erred in ruling on and denying Hitchcock's motion for a new sentencing proceeding; (17) the trial court erred in excluding from evidence and refusing to consider the State's prior offer of a life sentence; and (18) conducting Hitchcock's sentencing proceeding many years after his crime was unconstitutional. *Id.*

26.  Hitchcock appealed the denial of his motion, and we affirmed. *Id.* at 27-28.

Hitchcock also filed a rule 3.850 motion in 2001, raising thirteen claims.  *Hitchcock v. State* (*Hitchcock VIII*), 991 So. 2d 337, 342-44 (Fla. 2008).[11]  The postconviction court denied all of

---

11.  He argued (1) resentencing counsel was ineffective for failing to object to the testimony of a witness; (2) guilt-phase counsel and resentencing counsel were ineffective for failing to object to testimony and argument that the victim was a virgin at the time of the offense; (3) guilt-phase counsel was ineffective for failing to spend adequate time preparing for trial and thus opened the door to negative character evidence about him and for failing to admit evidence implicating Richard in the murder; (4) resentencing counsel was ineffective for failing to recall a doctor to explain the Minnesota Multiphasic Personality Inventory narrative report introduced by the State; (5) resentencing counsel was ineffective for failing to have him evaluated for neuropsychological impairment; (6) resentencing counsel was ineffective for failing to fully develop available statutory and nonstatutory mitigating evidence; (7) the State violated his constitutional rights by destroying exculpatory physical evidence; (8) the trial court's instructions diminished the jury's role in sentencing in violation of *Caldwell v. Mississippi*, 472 U.S. 320 (1985), and counsel was ineffective for not objecting to the instructions; (9) newly discovered evidence demonstrated that Richard committed the murder; (10) the State failed to disclose the deficiencies of hair analyst Diana Bass and then knowingly presented the analyst's incompetent and false testimony, guilt-phase counsel was ineffective for failing to challenge the admissibility of Bass's testimony, and this newly discovered evidence of Bass's incompetence undermined his conviction; (11) resentencing counsel was ineffective for failing to object to the court's felony-murder instruction and for failing to request a jury instruction on the elements of sexual battery; (12) his constitutional

- 12 -

Hitchcock's claims, and he appealed, raising eleven issues.[12]  *Id.* at

rights were violated because he was not present at the bench conference when peremptory challenges were exercised, trial counsel was ineffective for failing to ensure that Hitchcock was present during all critical stages of the proceedings, and the trial court erred by not ensuring that the transcript was complete; and (13) Florida's capital sentencing scheme is unconstitutional as applied to him.  *Hitchcock VIII*, 991 So. 2d at 344 n.5.

12.  He claimed (1) the circuit court erred in holding that his guilt-phase claims were procedurally barred; (2) the circuit court erred in denying his claim that resentencing counsel was ineffective for failing to object to the testimony of a witness; (3) the circuit court erred in denying his claim that guilt-phase counsel was ineffective for failing to spend adequate time preparing for trial and thus opened the door to negative character evidence about him and for failing to admit evidence implicating Richard in the murder; (4) the circuit court erred in denying his claim that resentencing counsel was ineffective for failing to present available evidence of statutory mitigating circumstances and organic brain damage; (5) the circuit court erred in denying his claim that the State violated his constitutional rights by destroying exculpatory physical evidence; (6) the circuit court erred in denying Hitchcock's claim that the trial court's instructions diminished the jury's role in sentencing, in violation of *Caldwell* and counsel was ineffective for not objecting to the instructions; (7) the circuit court erred in denying his claim that newly discovered evidence demonstrated that Richard committed the murder; (8) the circuit court erred in denying his claim that his constitutional rights were violated when the State failed to disclose the deficiencies of hair analyst Diana Bass and then knowingly presented the analyst's incompetent and false testimony, guilt-phase counsel was ineffective for failing to challenge the admissibility of Bass's testimony, and this newly discovered evidence of Bass's incompetence undermined his conviction; (9) the circuit court erred in denying his claim that resentencing counsel was ineffective for failing to object to the court's felony-murder instruction and for failing to request a jury

- 13 -

344. He also filed a petition for writ of habeas corpus, raising six issues.[13] *Id.* at 345. We affirmed the postconviction court's denial of Hitchcock's motion for postconviction relief and denied his petition for writ of habeas corpus. *Id.* at 364.

Hitchcock then unsuccessfully engaged in further federal and state litigation. *See Hitchcock v. Sec'y, Dep't of Corr.*, No. 6:08-CV-

---

instruction on the elements of sexual battery; (10) the circuit court erred in denying his claim that his constitutional rights were violated when he was not present at the bench conference where peremptory challenges were exercised, trial counsel was ineffective for failing to ensure that he was present during all critical stages of the proceedings, and the trial court erred by not ensuring that the transcript was complete; and (11) the circuit court erred in denying his claim that he is entitled to relief under *Ring v. Arizona*, 536 U.S. 584 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Hitchcock VIII*, 991 So. 2d at 344 n.6.

13. Hitchcock argued (1) his constitutional rights were violated when he was deprived of notice of felony murder and a unanimous verdict identifying whether the jury found him guilty on the theory of felony murder or premeditated murder, and appellate counsel was ineffective for failing to raise this claim on direct appeal; (2) appellate counsel was ineffective for failing to raise on direct appeal the claim that his absence from crucial portions of his trial violated his constitutional rights; (3) appellate counsel was ineffective for failing to challenge on direct appeal the trial court's finding that the murder was committed during a sexual battery; (4) appellate counsel was ineffective for failing to raise on direct appeal the claim that the resentencing instructions violated *Caldwell*; (5) Florida's death penalty statute is unconstitutional because it violates *Ring* and *Apprendi*; and (6) he is incompetent to be executed. *Hitchcock VIII*, 991 So. 2d at 345 n.7.

- 14 -

1719-ORL-31KRS, 2012 WL 4339573 (M.D. Fla. Sept. 20, 2012) (denying federal habeas petition); *Hitchcock v. Sec'y, Florida Dep't of Corr.*, 745 F.3d 476 (11th Cir. 2014) (affirming denial of habeas corpus); *Hitchcock v. Crews*, 574 U.S. 939, 939 (2014) (denying petition for writ of certiorari); *Abdool v. Bondi*, 141 So. 3d 529 (Fla. 2014) (unsuccessfully challenging "Timely Justice Act of 2013").

Most recently, Hitchcock argued in a successive rule 3.851 motion for postconviction relief that his death sentence—which became final in 2000—was unconstitutional under *Hurst v. Florida*, 577 U.S. 92 (2016), and this Court's decision on remand in *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla 2020). *Hitchcock v. State* (*Hitchcock IX*), 226 So. 3d 216, 216-17 (Fla. 2017). The postconviction court summarily denied Hitchcock's motion, a denial we affirmed because precedent foreclosed relief and *Hurst* did not apply retroactively to Hitchcock's sentence, which had become final when the U.S. Supreme Court decided *Ring*. The U.S. Supreme Court denied Hitchcock's petition for writ of certiorari on December 4, 2017. *Hitchcock v. Florida*, 583 U.S. 1019 (2017).

On March 30, 2026, Governor DeSantis signed a death warrant for Hitchcock's execution. The execution is set for April 30, 2026, at 6:00 p.m. On April 1, 2026, under the circuit court's separate scheduling order, Hitchcock filed demands for additional public records directed to the Florida Department of Corrections (FDOC) and the Florida Department of Law Enforcement (FDLE). In his requests, he clarified that he was "not arguing that the protocol *itself* is unconstitutional. Mr. Hitchcock seeks records which support the colorable claim that FDOC's failure to follow its own policies and procedures violates his Eighth Amendment rights." (Emphasis omitted.) Both state agencies filed written objections, and after conducting a hearing, the circuit court sustained FDOC's and FDLE's objections.

Timely under this Court's scheduling order, Hitchcock filed the successive motion for postconviction relief at issue here, raising the following two issues: (1) the denial of access to lethal injection records violates his rights under article I, section 24 of the Florida Constitution, and the Fifth and Fourteenth Amendments of the U.S. Constitution, ultimately preventing him from proving a viable claim that his execution would violate the Eighth Amendment; and (2) his

execution would be the unconstitutional execution of an innocent man in violation of the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution under *Herrera v. Collins*, 506 U.S. 390, 417 (1993), as well as the corresponding provisions in the Florida Constitution. In support he attached an affidavit of Dr. Daniel Buffington, which also had accompanied his public records requests. In the affidavit, Dr. Buffington provided his "expert opinion as to the significance and importance" of the information requested, stating that certain errors or deviation from lethal injection protocol "could result in unnecessary pain or discomfort or an unexpected termination of the execution procedure prior to the inmate's death." Hitchcock also moved for a stay of execution.

The circuit court held a *Huff*[14] hearing on April 9, 2026, to decide whether Hitchcock's motion required an evidentiary hearing. That same day, the court denied Hitchcock's request for an evidentiary hearing. On April 13, 2026, the circuit court entered its order summarily denying Hitchcock's successive motion for postconviction relief and denying his motion for stay. Hitchcock

---

14. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

now timely appeals the circuit court's order.

## II

"Summary denial of a successive postconviction motion is appropriate '[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief.' " *Bogle v. State*, 322 So. 3d 44, 46 (Fla. 2021) (alteration in original) (quoting Fla. R. Crim. P. 3.851(f)(5)(B)); *see* Fla. R. Crim. P. 3.851(h)(6).  In reviewing a circuit court's summary denial, "this Court must accept the defendant's allegations as true to the extent that they are not conclusively refuted by the record." *Tompkins v. State*, 994 So. 2d 1072, 1081 (Fla. 2008) (citing *Rolling v. State*, 944 So. 2d 176, 179 (Fla. 2006)).  Still, "[t]he defendant bears the burden to establish a prima facie case based on a legally valid claim; mere conclusory allegations are insufficient." *Franqui v. State*, 59 So. 3d 82, 96 (Fla. 2011) (citing *Freeman v. State*, 761 So. 2d 1055, 1061 (Fla. 2000)).  A circuit court's decision whether to grant an evidentiary hearing on a rule 3.851 motion "is tantamount to a pure question of law, subject to de novo review." *Marek v. State*, 8 So. 3d 1123, 1127 (Fla. 2009) (citing *State v. Coney*, 845 So. 2d 120, 137 (Fla. 2003)).

## A

In his first argument on appeal, Hitchcock argues the circuit court erred when it sustained FDOC's and FDLE's objections to his demands for public records filed on April 1, 2026, and denied his requests. Hitchcock clarifies in his initial brief that he does not present this argument as a newly discovered evidence claim but as "a violation of Mr. Hitchcock's rights which renders his execution unconstitutional." In essence, Hitchcock presents a procedural due process claim ultimately seeking the ability to pursue an Eighth Amendment method-of-execution claim. We conclude Hitchcock is not entitled to relief.

## 1

The first reason Hitchcock's argument fails is that his public records-based claim is not one aimed at the validity of the judgment or sentence. Instead, he asserts what is essentially a freestanding due process claim, untethered to any claim that is cognizable under rule 3.851.[15]

---

15. Hitchcock's initial brief states: "Mr. Hitchcock has not raised either an 'as-applied' or 'method of execution' challenge to the use of lethal injection for the State's planned execution, but rather [argues] that he is being prevented from obtaining the

- 19 -

By insisting that he has a right to discovery in the absence of a claim that could give rise to relief under rule 3.851, Hitchcock mirrors the strategy pursued by several defendants in federal court. But no constitutional right exists to discover grievances or to litigate effectively once in court. *Lewis v. Casey*, 518 U.S. 343, 354 (1996) (disclaiming prior statements appearing to suggest that the State must enable a prisoner to discover grievances, and to litigate effectively in court); *Hill v. Dailey*, 557 F.3d 437, 439 (6th Cir. 2009) (citing *Lewis*, 518 U.S. at 354, and discussing that the State does not have an obligation to ensure prisoners "litigate effectively once in court").

So courts presented with similar scenarios have rejected due process and other rights-based arguments to execution-related information. *See, e.g.*, *Trottie v. Livingston*, 766 F.3d 450, 452 (5th Cir. 2014) ("[W]e have held that an uncertainty as to the method of execution is not a cognizable liberty interest." (citing *Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir. 2013))); *First Amend. Coal. of Ariz., Inc. v. Ryan*, 938 F.3d 1069, 1081 (9th Cir. 2019) (rejecting

---

necessary records to prove any legitimate challenge." Initial Brief of the Appellant at 16-17.

arguments that First Amendment entitles inmates to access to information regarding execution drugs and personnel to discover whether they have a colorable claim that their executions will be carried out in violation of the Eighth and Fourteenth Amendments); *Jones v. Comm'r, Georgia Dep't of Corr.*, 812 F.3d 923, 929 (11th Cir. 2016) ("Jones has not identified any cognizable liberty interest infringed by the Georgia secrecy law nor has he even begun to describe the framework for analyzing this novel constitutional right."); *Sepulvado*, 729 F.3d at 420 ("There is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on [the inmate] by withholding the details of its execution protocol."); *Zink v. Lombardi*, 783 F.3d 1089, 1109 (8th Cir. 2015) (agreeing with the Fifth and Eleventh Circuits that "a prisoner's assertion of necessity—that the State must disclose its protocol so he can challenge its conformity with the Eighth Amendment—does not substitute for the identification of a cognizable liberty interest" (citation modified)).

For example, in 2014, Ohio enacted a law treating the identity of individuals and entities that participate in the lethal injection process as confidential and privileged under law. *Phillips v.*

*DeWine*, 841 F.3d 405, 410 (6th Cir. 2016). The law also prohibited the information from being disclosed as a public record or subject to disclosure during judicial proceedings, with few exceptions. *Id.* Prisoners challenged the new law, arguing in part that it violated their equal protection and due process rights and their right to access the courts because it "denie[d] [them] an opportunity to discover and litigate non-frivolous claims." *Id.* at 412, 420 (second alteration in original). But those arguments were rejected because "no constitutional right exists to discover grievances or to litigate effectively once in court." *Id.* at 420 (citing *Lewis*, 518 U.S. at 354, and *Hill*, 557 F.3d at 439, and collecting cases).

Likewise, Hitchcock has not raised a claim that is cognizable under rule 3.851. As a result, his constitutional arguments grounded in denial of discovery do not form a valid basis on which to vacate his death sentence. *Jones*, 812 F.3d at 930 (holding that a stand-alone claim that a Georgia statute infringed on defendant's ability to "discover grievances, and to litigate effectively once in court" was untethered to an Eighth Amendment claim and therefore did not "implicate[] any constitutional right").

So even if the circuit court erred in denying the public records

requests, Hitchcock would not be entitled to relief from his sentence.

**2**

Hitchcock's claim fails for a second reason though. Even if the denial of public records on its own could "render[] his execution unconstitutional" as Hitchcock argues, the circuit court did not err in denying his requests. To explain why, and before addressing each of Hitchcock's sub-arguments on this point, we will provide an overview of Florida's public records law in the context of capital postconviction proceedings.

**a**

Section 27.7081, Florida Statutes, and Florida Rule of Criminal Procedure 3.852 currently govern public records production for capital postconviction inmates. We adopted the current rule 3.852 following an extensive review process and a statutory repeal. *Sims v. State*, 753 So. 2d 66, 69 (Fla. 2000). Initially, though, capital collateral representative (CCR) attorneys were encountering discovery problems under then-existing public records laws because there was no formal discovery mechanism under rule 3.850. CCR had to file incomplete rule 3.850 motions to

meet the one-year deadline for filing a motion under that rule, reserving the right to supplement the motion upon the receipt and review of belated public records.

Our opinion adopting the original rule highlighted that it was a "carefully tailored discovery rule for public records production ancillary to rule 3.850 and 3.851 proceedings." *See id.* (citing *In re Amend. to Fla. Rules of Crim. Proc.—Cap. Postconviction Pub. Recs. Prod.*, 683 So. 2d 475, 476 (Fla. 1996)). We also noted "[t]he rule does not affect, expand, or limit the production of public records for any purposes other than use in a 3.850 or 3.851 proceeding" and that any public records not obtained under rule 3.852 must still be admissible, suggesting public records obtained outside of the postconviction discovery process. *See In re Amend. to Fla. Rules of Crim. Proc.—Cap. Postconviction Pub. Recs. Prod.*, 683 So. 2d at 476 n.1.

Subsequently, the Legislature repealed our rule and passed chapter law 98-198, codified at section 119.19, Florida Statutes (Supp. 1998). *Sims*, 753 So. 2d at 69. The newly passed statute codified the response to the public record conundrum. We adopted a revised version of rule 3.852, again stating that the rule should

"serve as a basis for providing to the postconviction process all public records that are relevant or would reasonably lead to documents that are relevant . . . to postconviction issues." *Amends. to Fla. Rules of Crim. Proc. 3.852 (Cap. Postconviction Pub. Recs. Prod.) & Rule 3.993 (Related Forms)*, 754 So. 2d 640, 642 (Fla. 1999). Since 1998, the relevant statute has undergone revisions and is now renumbered as section 27.7081, Florida Statutes (2025).

In their present-day forms, the rule and statute impose special requirements on state officials to make documents relevant to postconviction claims readily accessible through a repository. § 27.7081(3), Fla. Stat. The scheme further streamlines the process for obtaining "additional" public records that have not already been set aside by state officials, providing strict timelines for an agency or person served with a request under the statute to object and for the circuit court already assigned to the case to resolve the dispute. § 27.7081(8), Fla. Stat.; Fla. R. Crim. P. 3.852(g). This alleviates the need for a capital postconviction inmate to pursue records separately under chapter 119. *Cf.* § 27.7081(11), Fla. Stat. The statute is not unqualified though.

Throughout each iteration of the statute, it has required

counsel for a postconviction inmate to demonstrate that records sought beyond those contained in the repository are "relevant to the subject matter of a proceeding under Rule 3.850 or Rule 3.851 or appear reasonably calculated to lead to the discovery of admissible evidence." § 119.19(8)(b)(3), Fla. Stat. (Supp. 1998). Separately, section 27.708 restricts collateral counsel from requesting public records on behalf of a capital postconviction inmate except from the records repository and through the additional avenues provided by section 27.7081. § 27.708(3), Fla. Stat. (2025).

**b**

It is against this backdrop that we now address Hitchcock's arguments. First, Hitchcock argues that rule 3.852 and section 27.7081, Florida Statutes, hinder his access to public records because the rule and statute require defendants to overcome hurdles that are not imposed on members of the general public. He argues that he is a member of the public, but his access to public records is being denied based entirely on his status as a capital postconviction inmate because of the "additional hoops" the statute and rule require he jump through.

Hitchcock's argument on this point fails because it appears to

be based on the inaccurate view that Hitchcock is limited to seeking public records under rule 3.852, to the exclusion of chapter 119. But rule 3.852 and section 27.7081 are there to supplement chapter 119 in the context of postconviction litigation—not to supplant. The plain language of both the rule and statute confirms this conclusion, stating they "do[] not affect, expand, or limit the production of public records for any purpose other than use in a proceeding held pursuant to Rule 3.850 or Rule 3.851." § 27.7081(2), Fla. Stat.; Fla. R. Crim. P. 3.852(a).

The rule's provisions must be read in context though. And in the overall context of Florida's postconviction scheme, rule 3.852 is a discovery rule. *See, e.g.*, *Sims*, 753 So. 2d at 69 (referring to rule 3.852 as a "discovery rule"). It follows that to benefit from the rule's streamlined process, the normal constraints of discovery apply. Those constraints include a categorical limitation on the types of records a postconviction defendant may seek—that is, those documents that appear "reasonably calculated to lead to the discovery of admissible evidence." Fla. R. Crim. P. 3.852(i)(1)(C). Section 27.7081 echoes that limitation. § 27.7081(9)(a)3., Fla. Stat. And our precedent echoes it too, clarifying that if a postconviction

defendant avails himself of rule 3.852's streamlined process, he is prohibited from conducting a "fishing expedition" and the records must relate to a "colorable claim." *Sims*, 753 So. 2d at 70. Those limitations are characteristic of discovery in all types of litigation in state and federal courts. There is nothing problematic or even unexpected about the constraining language in rule 3.852.

*Wyatt v. State*, 71 So. 3d 86 (Fla. 2011), supports this conclusion. There, a postconviction movant, through counsel, argued that Florida Rule of Criminal Procedure 3.852 and section 27.7081, Florida Statutes (2006), unconstitutionally restricted his right to public records access under the Florida and U.S. constitutions because both provisions impermissibly mandate that his demand for public records not be "overly broad or unduly burdensome" and that he make his own search for records. *Wyatt*, 71 So. 3d at 110-11. We concluded that the requirement that a defendant make a diligent search through records already produced and narrow his or her request to provide adequate notice to the agency from which a defendant seeks information is reasonable in the context of capital postconviction claims. *Id.* at 111.

Hitchcock's constitutional arguments related to the colorable

claim requirement also fail. There is no equal protection violation—Hitchcock is not being treated differently based on his status as an inmate whose conviction has become final. *See also Willacy v. State,* No. SC2026-0519, 2026 WL 1021168, at *6 (Fla. Apr. 15, 2026) (holding denial of public records request relating to Florida's lethal injection protocol did not violate equal protection, where request was not related to any colorable claim for postconviction relief), *cert. denied,* No. 25-7220, 2026 WL 1074143 (U.S. Apr. 21, 2026). And to the extent Hitchcock alleges an Eighth Amendment violation, we reject that argument too. Instead, his status as a capital postconviction movant makes available to him a streamlined method of seeking public records, if those documents are reasonably calculated to lead to the discovery of admissible evidence. Because rule 3.852 only supplements instead of supplants chapter 119, the circuit court did not err in denying Hitchcock's requests.

**c**

Hitchcock next argues that even if the colorable claim limitation applies to his public records requests, he has met it. Again, Hitchcock is mistaken.

Hitchcock's alleged colorable claim is a method-of-execution claim. To challenge a method of execution under the Eighth Amendment's prohibition of cruel and unusual punishment, Hitchcock must "(1) establish that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering and (2) identify a known and available alternative method of execution that entails a significantly less severe risk of pain." *Asay v. State*, 224 So. 3d 695, 701 (Fla. 2017) (citing *Glossip v. Gross*, 576 U.S. 863, 877 (2015)); *Bucklew v. Precythe*, 587 U.S. 119, 139-40 (2019) (reconfirming that anyone bringing a method-of-execution claim alleging the infliction of unconstitutionally cruel pain must meet the *Baze*[16]-*Glossip* test).

The most obvious defect with Hitchcock's position is that he has not even attempted to identify a known and available alternative method of execution that entails a significantly less severe risk of pain. There is no viable claim alleged to which his public records requests would be relevant.

---

16. *Baze v. Rees*, 553 U.S. 35 (2008) (plurality opinion).

Secondly, his allegations that the public records would be relevant to establishing the first prong of the *Baze-Glossip* framework rely on a speculative leap that we have recently rejected. Hitchcock argues that the affidavit of Dr. Buffington attached to his postconviction motion supports the assertion that maladministration of the lethal injection protocol and "error or deviation could result in unnecessary pain or discomfort or an unexpected termination of the execution procedure prior to the inmate's death." But the affidavit contains the same logical gaps evident in the affidavits relied on in *Trotter v. State*, 428 So. 3d 68, 73 (Fla.), *cert. denied*, 146 S. Ct. 755 (2026), and *Heath v. State*, 426 So. 3d 1253, 1262 (Fla. 2026) ("The question is not whether protocol deviations occurred but whether the defendant's allegations would demonstrate a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering. Heath's allegations would not demonstrate such a risk."), *cert. denied*, No. 25-6746, 2026 WL 363902 (U.S. Feb. 10, 2026). We reject that argument again here.

**d**

Because we conclude Hitchcock's failure to establish that the

- 31 -

public records he sought were related to a colorable claim for relief, the circuit court did not err in denying an in-camera inspection or in sustaining objections from FDOC and FDLE.

**B**

Finally, we reject Hitchcock's remaining arguments on appeal. Hitchcock asserts his actual innocence claim, contending his execution in turn would be cruel and unusual. We have already said that we do not recognize an independent claim of actual innocence in postconviction proceedings. *Sweet v. State*, 293 So. 3d 448, 453-54 (Fla. 2020) (citing *Elledge v. State*, 911 So. 2d 57, 78 (Fla. 2005)). We have also held that Florida's refusal to recognize postconviction actual innocence claims does not violate the Eighth Amendment. *Id.* at 454 (citing *Tompkins*, 994 So. 2d at 1088-89). Hitchcock does little to acknowledge our precedent on this issue, let alone provide any reason we should recede from it. So we reject his argument.

We likewise reject his argument that declining to consider the merits of his actual innocence claim results in a manifest injustice because it violates his due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. Hitchcock has

received the process due to him, has been adjudicated guilty, and has been sentenced to death. Hitchcock has also had the opportunity to pursue claims of newly discovered evidence. *See, e.g., Tompkins*, 994 So. 2d at 1089. There is no due process violation, and the circuit court correctly rejected this claim.

## III

We affirm the summary denial of Hitchcock's successive motion for postconviction relief and the order denying his public records requests. We also deny his motion for stay of execution. No oral argument is necessary, and no motion for rehearing will be considered by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, GROSSHANS, FRANCIS, SASSO, and TANENBAUM, JJ., concur.

An Appeal from the Circuit Court in and for Orange County,
    Keith Carsten, Judge
    Case No. 481976CF001942000AOX

Eric Pinkard, Capital Collateral Regional Counsel, Joshua P. Chaykin, Assistant Capital Collateral Regional Counsel, Cortney L. Hackett, Assistant Capital Collateral Regional Counsel, and Christopher Clemente, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

James Uthmeier, Attorney General, Tallahassee, Florida, Timothy A. Freeland, Special Counsel, Assistant Attorney General, and Jennifer A. Davis, Senior Assistant Attorney General, Tampa, Florida,

for Appellee